MAGNOLIA COCA COLA BOTTLING CO. v. JORDAN et ux.

No. 2630.

Court of Civil Appeals of Texas. El Paso. Feb. 25, 1932.

Rehearing Denied March 24, 1932.

PELPHREY, C. J.

On May 26, 1930, the automobile of appellees, being driven in 'a southerly direction on Park street, by Mrs. Jordan, was damaged at or near the intersection of that street with Third street. Mrs. Jordan, who was then in a pregnant condition, was also injured. Later appellees filed this suit in the district court of El Paso county against appellant, and alleged in their petition that Ethel Jordan was driving the automobile in a southerly direction along the right-hand side of Park street; that appellant's agent was driving the truck in a westerly direction on Third street; that upon reaching the intersection of Third and Park streets he cut the corner, drove the truck in a southwesterly direction between the center of the intersection and the southeast corner of the block, striking the automobile with great force and violence, badly crushing her against the steering wheel and other parts of the car, bruising her stomach and back, causing her to give premature birth to twin babies, one of which was born badly bruised, and died from such injuries nineteen days after birth; that she was permanently injured thereby, still suffering pains in her back and head; her nervous system greatly damaged, had lost weight, was unable to sleep and her general health greatly impaired.

. The specific acts of negligence alleged are: (1) That the truck was being driven at a rate of speed in excess of 20 miles per hour; (2) that the driver of the truck failed to yield the right of way; (3) that he failed to pass beyond the center of the intersection before turning to the left; (4) that he failed to give audible or visible signal of his intention to turn; and (5) that he failed to use ordinary care in an effort to stop.

Appellant answered by general demurrer, special exception, general denial, and specially denied the particulars of negligence alleged in appellee's petition; pleaded the contributory negligence of Ethel Jordan in failing to keep a proper lookout at the time of the accident; and that the driver of the truck at the time of the accident was not engaged in the performance of any duty or service for it or in the furtherance of its business, but was engaged upon a mission wholly his own, using the truck without the knowledge or consent of appellant.

In response to special issues, the jury found: (1) That the truck driven by appellant's employee approached the intersection of Third and Park streets, along Third street, and at or near such intersection collided with appellees' automobile; (2) that the driver of the truck did not approach the intersection going South on Park street; (3) that appellee's wife suffered the personal injuries complained of as a result of the collision; (4) that appellant's employee, at the time of the collision, was acting within the scope of his employment; (5) that the driver of the truck approached the intersection from the east on Third street and turned southerly on Park street without running beyond and to the right of the center of the intersection; (6) that the driver's negligence in so doing was a proximate cause of the injuries complained of; (7) that the truck was being operated at a speed in excess of twenty miles per hour; (8) that the negligence of the driver in so operating the truck was a proximate cause of the injuries complained of; (9) that the driver of the truck failed to keep a proper lookout; (10) that such failure was negligence and a proximate cause of the injuries; (11) that the car driven by appellee's wife was in or entering the intersection at the time the truck traveling west along Third street reached the easterly line of Park street; (12) that the truck failed to yield the right of way to the automobile; (13) that such failure was a proximate cause of the injuries; (14) that appellee's wife did not fail to keep a proper lookout; (15) that the driver of the truck was not acting solely in his own business in driving the truck at the time of the accident; (16) that the collision did not constitute an unavoidable accident; (17) that the sum of $5,000 would reasonably compensate appellee for the personal injuries suffered; (18) that an unborn son of appellee suffered injuries as a result of the collision, and died as a proximate result of such injuries; and (19) that the sum of $1,250 would reasonably compensate appellees for the pecuniary damages suffered by them by reason of the death of said minor son.

Judgment was awarded to appellees in the sum of $5,000 on the above findings. Appellant excepted to the judgment against it for the same amount, and appellees excepted to the court's refusal to render judgment in their favor for the $1,250 found by the jury to be their damages as a result of the death of their minor son.

Appellant's motion for a new trial was overruled, and it has perfected an appeal to this court.

Brown & Brooke, of El Paso, for appellant.

Lea, McGrady & Edwards, of El Paso, for appellees.

### Opinion.

Appellant's first four propositions relate to the question of unavoidable accident. In the original charge the court submitted the issue thus:

"Question No. Seventeen: Do you find from the evidence that the collision in question constituted an unavoidable accident? Answer yes or no.

"By an 'accident' or 'unavoidable accident' is meant such an unexpected catastrophe as occurs without anyone being to blame for it; that is, in other words, being guilty of negli-

gence in doing or permitting to be done or omitting to do the particular thing that caused such casualty."

In a supplemental charge the court gave the following instruction: "In connection with Question No. 17, you are charged that if you find from a preponderance of the evidence that said collision was an avoidable accident answer said question in the negative, but unless you so find answer same in the affirmative."

It appears from the record that, as originally drawn, there appeared between question No. 17 and the definition of unavoidable accident, the following charge: "Unless you find from a preponderance of the evidence that the collision complained of was not an unavoidable accident answer the foregoing question 'yes,' but if you find from a preponderance of the evidence that same was not an unavoidable accident answer the same 'no.' "

To the charge as originally drawn, appellant interposed the following objections: "To question No. 17 in which the court submits the question of unavoidable accident because it is not in proper form and for the reason the question as propounded in connection with the explanation and definition is confusing and misleading and imposes a higher burden upon the defendant than is imposed by law and imposes upon the defendant the burden of disproving unavoidable accident. It imposes the burden of proving by a preponderance of the evidence that the accident was avoidable, which is not the burden imposed by law. It does not properly define avoidable accident and unavoidable accident. It fails to take into consideration the issue of proximate cause in connection with the accident and in connection with unavoidable accident and fails to take into consideration new and independent cause. If the injuries were the result of matters not alleged in the pleadings and relied upon for a recovery, or if this accident and injury happened or was brought about without the negligence of any of the parties to the accident being a proximate cause thereof, there could be no recovery and the court in defining unavoidable accident fails to take into consideration and submit to the jury for its consideration those elements, and it fails properly to submit to the jury the converse of the proposition in connection with the instructions as given relative to how they should answer the question. It is further objected that question No. 17 contains no definition of avoidable accident and there is nowhere presented to the jury any rule by which they can answer question No. 17 correctly. The form of the question does not correctly impose the burden upon the plaintiff to establish that it was not an unavoidable accident."

After said objection was made the court struck out the above-quoted instruction as to how to answer question No. 17, and gave in lieu thereof supplemental charge No. 1.

Thereupon appellant renewed his objections, applying them also to supplemental charge No. 1.

Appellant's propositions are: (1) That the court erred in submitting the issue as he did, in that it "placed an undue burden on defendant and that the burden was upon plaintiffs to clear themselves of those elements which would prevent a recovery and therefore the burden was on plaintiffs to show by a preponderance of the evidence that the happening and injuries were not the result of or due to an unavoidable accident"; (2) that the court erred in failing to define "avoidable accident"; (3) that the court erred in improperly defining "unavoidable accident"; and (4) that the charge as given, taken together and considered as a whole, was misleading and confusing.

■ The definition of unavoidable accident as given is practically identical with that approved by the San Antonio Court of Civil Appeals in the case of Vesper et ux. v. Lavender, 149 S. W. 377, writ refused, and we do not find, from a search of the authorities, that the definition there approved has ever been changed.

The above definition appears to be in harmony with the holding of our Court of Civil Appeals in the case of Galveston, H. & S. A. R. Co. v. Gormley, 35 S. W. 488, in which the court used this language: "Where an accident occurs without the negligence of either party, it is known as an 'unavoidable' accident."

■ We fail to find the definition subject to the objections interposed. If the definition of "unavoidable accident" be correct, then was it necessary for the court to also define "avoidable accident" in connection with supplemental charge No. 1?

In the case of Robertson & Mueller v. Holden, 1 S.W.(2d) 570, Judge Speer, speaking for Section B of the Commission of Appeals in a discussion of article 2189, Revised Statutes, has this to say: "In the nature of things, the statute has not attempted to declare what 'legal terms' shall be explained or defined further than 'shall be necessary to enable the jury to properly pass upon and render a verdict on such issues.' Reasonable necessity, considering the term or terms used, then, should be the test. Ordinary words of simple meaning, of course, need not be defined. But those terms which in law have a distinct fixed meaning which an ordinary person would not readily understand should, upon proper request, be defined."

It may be admitted that the terms "avoidable accident" and "unavoidable accident" are terms which have in law a distinct fixed meaning which an ordinary person would not

readily understand, and therefore should be defined; but, after the court has instructed the jury that an unavoidable accident is an unexpected catastrophe which occurs without any one being guilty of negligence in doing or permitting to be done or omitting to do the particular thing that proximately caused the casualty, we can see no reasonable necessity for the court to go further and define an avoidable accident. It seems clear to us that a jury, having been told what constitutes an unavoidable accident in law, would know that one which occurred by reason of some one doing or permitting to be done or omitting to do the particular thing that proximately caused the casualty would be an avoidable one, without having the court so instruct them.

It is apparent that the learned trial court in submitting the issue of unavoidable accident was trying to place that issue before the jury in a manner so as to avoid that confusion which has been so bothersome in cases where the issue has been present.

■ It is well settled that the burden is upon the plaintiff to prove that the happening was not the result of or due to an unavoidable accident.

The submission of this issue in a manner not to confuse the jury and at the same time to place upon the plaintiff the burden of proving the negative thereof has been a question which has worried both the trial and appellate courts.

■ The issue submitted here merely submits to the jury the question of whether or not the collision in question constituted an unavoidable accident. An affirmative answer would result in relieving the defendant of liability, but the issue as thus presented did not place the burden upon either party. In supplemental charge No. 1, the court instructed the jury that if they should find from a preponderance of the evidence that the collision was an avoidable accident, to answer the issue in the negative; in other words, that unless they believed from a preponderance of the evidence that the collision was not an unavoidable accident, to answer the question in the negative. A finding that a collision was avoidable certainly means that it was not unavoidable.

The assignments attacking the charge are therefore overruled.

■ We cannot agree with appellant's contention as to the excessiveness of the verdict.

Mrs. Jordan, in reciting her injuries, testified:

"That night I began to suffer, and I had to call Dr. Love there. He is my doctor. When I was struck first my back was hurt, and when I hit the Ford I was thrown against the steering wheel. My stomach was bruised, also my back. That night I was taken sick, and had to send for Dr. Love. He called about five or six o'clock. Previous to this time I knew that I was in a delicate condition. At that time I did not know that I was hurt seriously. Dr. Love got to the house about seven o'clock, after dark. He examined my back, examined my stomach, gave me some medicine to sleep, I never could sleep, I suffered until Monday morning. This was the 26th day of May, Monday. I was eight months in a family way at that time. I feared a premature birth. Dr. Love told me to go to bed and bathe my feet, and to drink plenty of water, and he gave me medicine to sleep. I never slept any, I walked the floor all the time until Sunday, the following Sunday morning after the accident. On Sunday morning I gave birth to twins, and the boy was bruised on the left hip and privates, there was scum over his eyes, he never did act right, did not seem like a baby, I gave birth to the twins between five and six o'clock Sunday morning. One was a girl, the other a boy. They never were weighed. The little boy lived for nineteen days. He never was a natural child, he did not seem natural, he did not seem like a baby, neither one of them did, in their disposition, they seemed to be weak, did not seem to have any strength, they did not nourish, they could not or did not know how. * * * I have been married going on sixteen years. I have given birth to eight children. * * * They were all born naturally, all healthy but this boy. Previous to this accident I was doing all my housework. * * * I have a three room house, and had four children at that time. I did all my own work, washing and everything, and took my husband's dinner to him, took care of my children, now I am not able to do anything. * * * I could not stay in bed before the twins were born because I suffered so in my stomach and back and my head, all over. After the birth of the two children I was in bed about two weeks, something like that. Since then I have not been the woman I was before. My normal weight was about one hundred and twenty-five or thirty pounds, I now weigh one hundred and fifteen pounds, I do not sleep well. I suffer from pain in my back and head. My nerves are just shot all to pieces. * * * I am not able to do my work now, I can not do anything only make a few biscuits, I don't do but precious little. I cannot sleep at night."

The above testimony relative to her condition at the time of the accident and since was corroborated by her husband. In the absence of a showing that anything occurred during the trial which was calculated to excite any passion or prejudice on the part of the jury, we cannot say that the verdict is excessive. Mrs. Jordan was before the jury,

and there is nothing to show that the amount awarded was not the result of the calm and conscientious deliberations of the jury, uninfluenced by passion or prejudice; and this is the test by which it must be measured. Texas & P. R. Co. v. Matkin (Tex. Civ. App.) 142 S. W. 604.

■ By cross-assignment appellees complain of the trial court's refusal to enter judgment in their favor for the $1,250 found by the jury to be the amount of their pecuniary loss as a result of the death of their infant son.

Appellee's allegations as to the death of and damages arising from the death of said infant are:

"And negligently and carelessly drove the defendant's truck into, upon and against the Dodge Sedan then and there operated by the plaintiff Ethel Jordan, with great force and violence, and hurled said Dodge Sedan and the plaintiff, Ethel Jordan, against the rear end of a car parked and standing on the west side of Park street, at the curb, badly crushing the said plaintiff, Ethel Jordan, against the steering wheel and other parts of her car, badly bruising her stomach and back, thereby causing the plaintiff, Ethel Jordan, who was then in a delicate condition, to give premature birth to twin babies, one of which was born badly bruised and with indications of the injuries and blows to the body of the said Ethel Jordan, which child died from such injuries after living nineteen days. * * *

"That said injury and all of them, and the death of said child, were proximately caused by the negligence of the defendant, its agent, servant and employee in the following particulars, to-wit: * * *

"That all of the above mentioned acts of omission and commission were proximate causes of each and all of the injuries and damage complained of herein, including the death of said child.

"That by reason of the injuries personal to her, the plaintiff, Ethel Jordan, has suffered damage in the sum of Ten Thousand ($10,-000.00) Dollars, and by reason of the loss of services of said infant child until the said child should have attained the age of twenty-one years, plaintiffs have been damaged in the sum of Five Thousand ($5,000.00) Dollars."

The court submitted the following issues relative to the injuries to, and the death of, the infant:

"Question No. Nineteen: Do you find from a preponderance of the evidence that as a result of the collision in question, if such collision there was, the unborn son of plaintiffs suffered physical injuries? Answer yes or no.

"Question No. Twenty: Do you find from a preponderance of the evidence that after the birth of said son that he died as a proximate result of the injuries so received, if any injuries he did so receive? Answer yes or no.

"If you have answered the two preceding questions in the affirmative then, but not otherwise, answer the following question in reference thereto.

"Question No. Twenty-One: Do you find from a preponderance of the evidence that by the death of said minor son plaintiffs suffered pecuniary damages? Answer yes or no.

"In connection with this question you are charged that plaintiffs would be entitled to the services and earnings of said minor son if he had survived, until he reached the age of twenty-one years. That he would have been under the legal duty of supporting and maintaining said minor son had he survived until he reached the age of twenty-one years. That even though deprived of their son they would be entitled to no damages for loss of companionship or as solace for grief.

"If you answer the foregoing question in the affirmative, then, but not otherwise, answer in reference thereto this additional question.

"Question No. Twenty-Two: What sum, if paid in cash now, do you find from a preponderance of the evidence would reasonably compensate plaintiffs for the damages, if any, resulting to them from the death of their minor son?

"For the elements you are to consider in answering this question you are referred to the directions in the issue just preceding."

In the judgment we find: "Plaintiffs excepted on the ground of the refusal of the court to enter judgment also against defendant for $1,250.00 additional in conformity with the finding of the jury in answer to special issue Number Twenty-two. The ground on which the court refused to enter such judgment is on the holding that the law gives to parents no cause of action for the loss of services of a child which dies as a proximate result of injuries while it is still quick in the womb of its mother, even though such injuries be inflicted by the negligence of the defendant."

Our statutes, as to recovery for injuries resulting in death, contain the following provision: "Art. 4672: The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."

The right of action for injuries resulting in death appears to have been first provided for by chapter 35, of the Acts of 1860, which reads:

"An Act authorizing the heirs, representatives or relations of deceased persons to sue:

for and recover damages where the death of such person or persons has been caused or occasioned by the negligence, culpable or wrongful act of another.

"Section 1. Be it enacted by the Legislature of the State of Texas, If the life of any person is lost by reason of the negligence or carelessness of the proprietor or proprietors, owner, charterer or hirer of any railroad, steamboat, stage-coach, or other vehicle, for the conveyance of goods or passengers, or by the unfitness, gross negligence or carelessness of their servants or agents, and whensoever the death of any person may be caused by wrongful act, neglect, unskillfulness or default, and the act, neglect, unskillfulness or default is such as would (if death had not ensued) have entitled the party, injured, to maintain an action for such injury, then and in every such case the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount, in law, to a felony."

It thus appears that the right of the parents to recover here depends upon whether or not the child, if it had lived, could have maintained an action against defendant for the injuries inflicted upon it before its birth. While there have been many changes in our statutes relative to the recovery for injuries resulting in death, yet the provision that recovery can be had only in cases where the person injured could have maintained an action, if he had lived, has not been changed, and appears now substantially the same as in the act of 1860.

Subdivision 1, of article 4671, of the Revised Statutes, reads: "When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskillfulness, or default of another person, association of persons, joint stock company, corporation or trustee or receiver of any person, corporation, joint stock company, or association of persons, his, its or their agents or servants, such persons, association of persons, joint stock company, corporation, trustee or receiver, shall be liable in damages for the injuries causing such death. * * *"

Did the Legislature in using the expression "injury causing the death of any person" intend to include prenatal injuries to an infant, or, in other words, was the word "person," as there used, intended to include an unborn child.

Article 4675, Revised Statutes, on the same subject, provides: "The action shall be for the sole and exclusive benefit of and may be brought by the surviving husband, wife, children and parents of the person whose death has been caused. * * *"

In Nelson v. Railway Co., 78 Tex. 621, 14 S. W. 1021, 1023, 11 L. R. A. 391, 22 Am. St. Rep. 81, the court was called upon to say whether a posthumous child was entitled to recover damages for the death of its father resulting from injuries inflicted by the alleged negligence of appellee.

The mother and two other children survived and compromised their claim, and later, after the appellant was born, the mother instituted a suit as his next friend.

Appellee filed general and special exceptions to appellant's petition, which were sustained by the court.

The Supreme Court, in deciding that those exceptions were improperly sustained, said: "We conclude, therefore, that it was manifestly the purpose of the Legislature to give the right of action, in a case like the present, to all of the surviving children of the deceased. We think, also, that the plaintiff in this case, although unborn at the time of his father's death, was in being, and one of his surviving children."

While there are decisions from several of the states holding that damages could not be recovered for prenatal injuries at common law, Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N. E. 638, 48 L. R. A. 225, 75 Am. St. Rep. 176; Drobner v. Peters, 232 N. Y. 220, 133 N. E. 567, 20 A. L. R. 1503; Gorman v. Budlong, 23 R. I. 169, 49 A. 704, 55 L. R. A. 118, 91 Am. St. Rep. 629; Stanford v. Railway Co., 214 Ala. 611, 108 So. 566, yet the above holding shows a tendency toward liberality in the construction of our statutes on the subject rather than the restricted view taken by the courts of our sister states.

We can see no logical reason why, if an unborn child is considered in being for the purpose of collecting damages for the negligent death of its father, it should not be considered also in being for the purpose of collecting damages inflicted upon its own person.

We have concluded, therefore, that the infant son of appellees, if its death had not ensued, could have maintained an action against appellant, and it follows that appellees, being its parents, can also maintain an action for the loss of its services.

The judgment of the trial court, in this respect, is accordingly reformed, and judgment here rendered that appellees recover from appellant the additional sum of $1,250, with legal interest thereon from March 25, 1931.

Reformed, and, as reformed, affirmed.