## MARSH v. WILLIAMS.

### No. 3895.

Court of Civil Appeals of Texas. Beaumont.
July 28, 1941.

Rehearing Denied Sept. 17, 1941.

202

Lightfoot, Robertson & Gano, of Fort Worth, and M. M. Feagin, of Livingston, for appellant.

Campbell & Foreman, of Livingston, for appellee.

COMBS, Justice.

This was an action by appellee, Mrs. Maggie Williams, against appellant, Mrs. Ada Marsh, for damages for personal injuries. The following facts found by the jury, answering special issues, indicate the nature of the suit: On the 23rd day of June, 1940, appellee "accompanied" appellant to Liberty, riding with appellant in her automobile, which appellant drove. Driving at a rate of speed in excess of 45 miles per hour, appellant turned her automobile over, injuring appellee. The rate of speed at which she was driving was negligence and a proximate cause "of the overturning of the car." Appellant failed to keep her car under proper control, which was negligence and a proximate cause "of the overturning of the said car." The overturning of the car was not the result of an unavoidable accident. Appellee was not guilty of any of the acts of contributory negligence charged against her. "On the occasion in question" appellee was not appellant's guest, but prior to the 23rd day of June, 1940, had been employed by appellant, which employ-

ment extended to and existed on the 23rd day of June, 1940. On this trip to Liberty appellee accompanied appellant "as one of the duties of her employment," and "was acting in the scope of her employment" in accompanying appellant "on the trip to Liberty on June 23rd, 1940." The jury assessed appellee's damages for her personal injuries at the sum of $7,500, and the parties agreed that she had suffered additional damages in the sum of $229.75. From the judgment against her in the sum of $7,729.75, rendered on the verdict of the jury, and the agreement of the parties, appellant duly prosecuted her appeal to this court.

█ (1) When the case was called for trial, appellant filed her motion for continuance. At that time she was confined to her bed at her home, and was physically unable to attend the trial and to testify as a witness; her condition was such that attendance on court would have further endangered her health. She had expected to be present at the trial and to testify. Appellee and appellant were the only two eyewitnesses to the accident. The jury found by its verdict the facts of the accident as testified to by appellee; had appellant testified she would have contradicted appellee's testimony in certain respects, but wherein she would have contradicted appellee was not shown by the motion. Appellant's physical condition was such, at the time the motion was filed, that her depositions could have been taken without further endangering her health. In her contest of the motion, appellee offered to waive all formalities and agreed that appellant's depositions could be taken and used on the trial; she further agreed that in taking the depositions the court could adjourn to appellant's bedroom, and that the deposition could be taken in the presence of the court and the jury; that offer was refused by appellant. Appellant's depositions had been previously taken and were on file in the papers of the case, and were accessible to both parties at the time the motion was filed. The motion did not detail the testimony which appellant proposed to give on the trial, and there was no showing that, if present, she would have testified to any fact not reflected by her depositions on file at that time. Appellee's original petition was filed on the 21st day of October, 1940, and the case was called for trial at the next ensuing term on the 2nd day of December, 1940, at which time it was continued to the next term on appellant's motion. At the next term the case was set by agreement for trial on the 6th day of January, 1941, and passed on appellant's motion, based on her sickness, to the 27th day of January, 1941, at which time it was tried, after the motion in issue was overruled. The motion for continuance was addressed to the sound discretion of the court, and on the facts the court did not abuse his discretion in overruling it. 9 Tex.Jur. p. 757, Sec. 83, and cases cited thereunder. Home Ins. Co. v. Williams, Tex.Civ.App., 84 S.W.2d 876, error dismissed; Art. 2168, R.C.S.; Turner v. Atlanta Nat. Bank, Tex.Civ.App., 83 S.W.2d 454; Hutson v. Cade et al., Tex.Civ.App., 217 S.W. 438; McFaddin et al. v. Oakwood Realty Co., Tex.Civ.App., 139 S.W.2d 636.

█ (2) We overrule the proposition that, on the allegations of her petition, appellee was as a matter of law appellant's guest. On this issue the court submitted to the jury the very issues made by appellee's petition. We also overrule the proposition that appellee's allegations, to the effect that she was appellant's employee, were insufficient in law "to show such relationship." The following quotation from the petition clearly states the relation of appellant and appellee, not as the conclusion of the pleader, but flowing from the alleged facts: "That plaintiff further shows in this connection that she was accompanying the defendant on the trip in question in the course of her employment by defendant, and at the solicitation, request and insistence of defendant, that the same was not intended as a pleasure trip on her part but was made in obedience to the insistence of defendant that she, plaintiff, may render such assistance as she could in making the trip to visit her daughter, she considering the same a part of the services for which she had been employed when accompanying the defendant on the trip in question, that her purpose in making the trip with defendant was to carry out her duties as an employee of defendant which she felt under obligations to do feeling that it was one of the services that defendant had the right to expect and demand of her, under the circumstances and which she was obligated and duty bound to perform if she expected to retain her position with defendant."

Appellee's testimony supports the verdict of the jury on the issue of her relationship to appellant. This conclusion overrules appellant's proposition that, on the undisputed evidence, appellee was appellant's guest

and in her employ at the time of the accident.

The following is one element of the court's charge on appellee's measure of damages, directing the jury to consider: "The impairment of ability of plaintiff, Mrs. Maggie Williams, to earn money, if any, you find from a preponderance of the evidence, she will in all reasonable probability suffer in the future on account of the injuries, if any, received by her as a result of the overturning of said car, on the occasion in question." Appellant excepted to this element of the charge on the ground that it was without support in the pleadings, and that it was without support in the evidence, particularly of sufficient probative value "to authorize the submission of the element contained in said issue of the impairment or destruction of the ability of the plaintiff to earn money in the past or in the future, and said issue submits to the jury the issue as to the reasonable probability of plaintiff to earn money in the future, and permits the jury, without evidence, to speculate, as to such earning capacity, and to include that element along with the other elements of damage submitted in said issue." The charge has such clear support in the pleadings that it would serve no useful purpose to quote from pleadings on the point. The charge also has support in the evidence. Appellee is now living in Livingston with her daughter, Mrs. Dan Peeles; her husband is dead. On the issue as to the duties of her employment, appellee testified: "Well, just almost everything around the house, you might say; I patched quite a number of garments for her, and made quite a number of new garments, and I pieced on a new quilt until I almost had it covered, and I pieced some counterpins, and I assembled a story for a year's subscription to the Houston Post, I believe it was. This did at defendant's request." She testified further that she helped with the cooking and washing and ironing; she fixed a number of sofa cushions; she looked after the colored help; she took care of the house during appellant's absence; at the time of the accident she had been employed by appellant a little less than a month. She testified: "Well, she gave me a little money along, and she gave me my room and board, and carried me to the show, and bought me cold drinks and candy, and stuff of that kind. We didn't have any understanding; she knew I was working for my wages. I had

told her I was trying to make my own way; that I had depended on Niena and Dan * * * my health was so good I felt disgusted with myself to sit in my room and have nothing to do, so I had told her I was going down there and work. I knew I could always pick up music pupils and sewing and different things. She let me use the machine to do sewing for others that I got money for. I stayed in her house; the machine was in my room. Yes, sir, I have, from time to time, engaged in practical nursing. From time to time in the past, I taught music, did sewing, and I kept house a couple of years for Dr. Flowers. Yes, I kept house for him two years. After I left there, I went to Cleveland. I had three different places where I went and nursed where there were sick people. Yes, sir, I received pay for that. Yes, sir, I received pay when I was teaching music. Yes, sir, I received pay when I was keeping house for Dr. Flowers. Yes, sir, I received pay on these other practical nursing cases I have been on from time to time. I had a case at the time she went for me, that was for Mrs. Davis, at the Sun oil field out from Liberty. She had been in the hospital for some time, and I went to take care of her, but I didn't stay there but a little while, because the doctor said she would have to be carried back to the hospital. He said he couldn't do much for her at home. When Mrs. Marsh came for me, I told her to carry me by and let me see that woman, because I had promised to take care of her as soon as they carried her home, and I went back by there and saw Mrs. Davis. She said she didn't know just when she would need me; that she wasn't ready to come out of the hospital, so I came home with Mrs. Marsh. We went by Dr. Delaney's house, but there wasn't anybody there but the colored help, and we came on. So I felt free to go ahead, since the other woman in the hospital did not need me. Before the wreck, my daughter worked several years in a store, and I kept house and did all the housework and laundry. I don't mean the washing. I did the ironing, worked in the flowers in the years, and I raised quite a lot of flowers, and had a lot of pot flowers. I couldn't walk very well in high-heeled shoes, but in my house shoes I used to take good long walks around there, and down the railroad track."

Appellee's injuries incapacitated her for work. On her testimony she was not able to perform the duties she was performing

under her employment with appellant. On the statement we have made appellee had suffered an impairment of her ability to earn money, and to support herself by her efforts. There was no testimony as to the money value of her board and keep—that was all she was receiving from appellant under contract of employment. She testified as to her duties under her employment, and the jury from common experience was able to evaluate appellee's services. Appellant did not object to appellee's testimony to the effect that she had received money from teaching music and her sewing and for other personal efforts. There being no testimony as to her earnings in these respects, it is not to be presumed that the jury added anything to the damages found by it on these grounds. This exception to the charge is overruled. 13 Tex. Jur. p. 391, Sec. 227; St. Louis S. W. Ry. Co. of Texas v. Niblack et al., 53 Tex.Civ. App. 619, 117 S.W. 188.

■ The court did not err in refusing to submit on appellant's request the issue of "assumed risk"; that issue was not raised by the evidence.

■ The court did not err in refusing the following requested issues: "What duty, if any, do you find from a preponderance of the evidence that the plaintiff was in the discharge of in the course of her employment on the trip from Livingston to Liberty when the accident occurred?" The requested issue was purely evidentiary.

■ The findings of the jury that appellee's employment "extended to and existed on the 23rd day of June, 1940," has clear support in the evidence. The statement given above reflects the nature of appellee's contract; the contract had not been terminated at the time of the accident. Appellant asked appellee to go with her on the trip to Liberty, and appellee testified that she went with appellant believing that it was her duty to go under her employment, and that she went on the trip as an employee.

The evidence clearly supports the jury's verdict in finding that appellee was not guilty of negligence "in failing to leave the automobile" prior to the accident.

■ We overrule the proposition attacking the verdict as being excessive. Appellee was about 70 years old at the time she was injured. She had been in good health and was able to support herself by her own efforts. After the accident, she stayed in the hospital nine days. The fact that she is now dependent on her children causes her to worry; she had always hoped that she would not be "dependent on anybody." She lives with her daughter and she and her husband have about all they can do, and she is dependent on them for her expenses; they have to buy things for her. After leaving the Liberty hospital, appellee was in Dr. Flower's hospital in Livingston for seventeen days, under Dr. Flower's treatment. He found bruises on her face and head, and on the left thigh of her leg. She was very nervous and upset when he first saw her. She also complained of pains in the upper part of her neck and lower part of her head, and in her hip. The main thing she complained of was "the lower part of back, lower down than what we call the lumbar region." Dr. Flowers found a bruised area on the left side of her head in the region of her temple about the size of the palm of his hand. Dr. Flowers' conclusion was that she had suffered a severe sprain in her neck; she still complains of that neck hurting her and of stiffness. Quoting Dr.Flowers' testimony:

"Well, she still complains of her back. She complained of her back and hip all the time she was in the hospital, and has complained continually since that time; and a short time ago she felt that there was a fracture in there that I over-looked, and I made a picture, and there is not any evidence of any fracture in the hip. She says it hurts her almost all the time.

"Q. What was your diagnosis of the injury she received, Doctor? A. Well, just severe bruises of the muscles and spraining of the ligaments of the hip joint.

"Q. And how about the back? A. I think the back was more just a bruise there. You have got to depend on a patient's honesty to tell about the back injuries when there is nothing external that shows, if she has a nervous strain or something that don't show externally.

"Q. Was it your diagnosis that she had a sprain of that lumbar sacroiliac region? A. Yes, sir.

"Q. Now, Doctor, if she didn't suffer with any of these conditions before the injury and does now; that is, the same thing, with reference to the questions I asked with reference to all these injuries * * * if prior to the injury she had good eyes and could read and wasn't dizzy at all, and since

that time she can read but very little coarse print and is not able to do any sewing and use her eyes in sewing, and suffers with dizziness, what, in your opinion caused that? A. Well, possibly the shake-up of this car wreck that she said she was in.

"Q. Could that result from the concussion of the brain she received? A. It could; yes, sir.

· "Q. If she does suffer now from her neck and didn't before the wreck, what, in your opinion is the probable duration of that injury? A. Well now, since it has been done six months or better, and it looks like there is very little hopes of her recovery.

"Q. Doctor, if she had normal use of her hips and back prior to the time she received the injuries and she still suffers with pain in the hips and in the back, and particularly when she undertakes to stoop, and is unable to lift anything, in you opinion what is the cause of that injury? A. I would think it would come from the injuries received in the wreck.

"Q. And if she so suffers, what in your opinion is the duration of it? A. The same as the others; if she still suffers now it likely will be permanent.

"Q. Doctor, do you have occasion to see her move around and climb steps since receiving those injuries? A. No, sir."

Dr. Flowers testified further that in his judgment there was a possibility that appellee's injuries were permanent; the injuries to her neck were probably permanent. On the issue of excessiveness, every judgment must stand on its own facts. The general principle announced by the following authorities support the verdict: 13 Tex. Jur. 261, Sec. 148; 13 Tex.Jur. 265, Sec. 150; 13 Tex.Jur. 270, Sec. 155, and cases cited under said above sections; Humble Pipe Line Co. v. Spivey, Tex.Civ.App., 13 S.W. 481; San Antonio & A. P. Ry. Co. v. Spencer, 55 Tex.Civ.App. 456, 119 S.W. 716; Allison v. Gulf, etc., Ry. Co., Tex.Civ. App., 29 S.W. 425; Houston Elec. Co. v. Potter, Tex.Civ.App.,· 51 S.W.2d 754; Dr. Pepper Bottling Co. v. Rainboldt, Tex.Civ. App., 66 S.W.2d 496; Magnolia Coca Cola Bottling Co. v. Jordan, Tex.Civ.App., 47 S.W.2d 901; Wichita Falls & S. R. Co. v. Holbrook, Tex.Civ.App., 50 S.W.2d 428.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.