BENOIT v. WILSON et al.

No. 10125.

Court of Civil Appeals of Texas. Austin.

April 29, 1953.

Rehearing Denied May 20, 1953.

James R. Meyers and Coleman Gay, Austin, for appellant.

W. M. Zachry and Douglas Boyd, Waco, Jones, Herring & Jones, Herman Jones, Austin, for appellees.

ARCHER, Chief Justice.

This suit was brought to recover damages for the death of Robert L. Wilson, Jr., who died as a result of burns received in the explosion of a tourist cottage in Austin. The plaintiffs, who are appellees here, were Mr. Wilson's surviving wife, two minor daughters and father. The defendant, who is appellant here, was Phillip Benoit, the owner of the tourist court where the explosion occurred.

A jury trial resulted in a judgment for plaintiffs for $23,274.80, upon findings that defendant's use of a rubber hose connection on the heating stove in the cabin was a proximate cause of the explosion, that defendant was negligent in having placed a cardboard cover over a vent in the ceiling which had been installed for cooling the cabin, and that such negligence was likewise a proximate cause of the explosion. The jury further found that Mr. Wilson did not intentionally permit the gas causing the explosion to escape into the room and was not guilty of contributory negligence in the particulars inquired about in the issues.

This appeal is before this Court on thirteen points assigned as error and are:

"First Point of Error

"The error of the Court in holding that there was evidence to support the jury's answer to Special Issue No. 1 that the use of the rubber hose connection was a proximate cause of the explosion. (Germane to Assignment of Error No. 3.)

"Second Point of Error

"The error of the Court in refusing to instruct a verdict for defendant since there was no evidence that the explosion was proximately caused by his negligence. (Germane to Assignments of Error Nos. 1 and 2.)

"Third Point of Error

"The error of the Court in holding that there was evidence to support the jury's answer to Special Issue No. 5 to the effect that defendant was negligent in covering the ventilator in the ceiling of cabin 22. (Germane to Assignment of Error No. 5.)

"Fourth Point of Error

"The error of the Court in holding that there was evidence to support the jury's answer to Special Issue No. 6 to the effect that the alleged negligence of appellant in covering the ventilator in the ceiling was a proximate cause of the explosion. (Germane to Assignment of Error No. 7.)

"Fifth Point of Error

"The error of the Court in permitting appellees' attorney in his closing argument to the jury to imply that one of appellant's witnesses had been paid to testify as she did. (Germane to Assignment of Error No. 25.)

"Sixth Point of Error

"The error of the Court in permitting appellees' attorney in his closing argument to the jury to state that he had refused to 'buy' the testimony of

one of appellant's witnesses and that he concluded that he 'didn't want any part of her' after he checked into her a bit, said, attorney having testified as to his conversation with said witness and there being no testimony that she offered to sell her story to him or that he made any investigation of her or that appellant had bribed her. (Germane to Assignment of Error No. 25.)

"Seventh Point of Error

"The error of the Court in permitting appellees' attorney in his opening argument to the jury to state in effect that appellant had attacked the character of appellee Garnitt Wilson Kerley.. (Germane to Assignment of Error No. 26.)

"Eighth Point of Error

"The error of the Court in refusing to submit one of defendant's requested special issues as to whether defendant was negligent in using the rubber hose in cabin 22. (Germane to Assignments of Error Nos. 19, 20, 21, 22 and 23.)

"Ninth Point of Error

"The error of the Court in failing to hold as a matter of law that Robert L. Wilson, Jr., was guilty of contributory negligence in failing to ventilate the cabin after smelling the escaping gas. (Germane to Assignments of Error Nos. 10 and 11.)

"Tenth Point of Error

"The error of the Court in failing to hold that the answer of the jury to Special Issue No. 9 that Robert L. Wilson, Jr., did not intentionally cause or permit the gas to escape is so greatly against the preponderance of the evidence as to be clearly wrong. (Germane to Assignment of Error No. 9.)

"Eleventh Point of Error

"The error of the Court in instructing the jury that in determining the amount of damages sustained by the minor plaintiffs by reason of their father's death they could consider not only the amount of money they might rea-sonably have expected to receive from him, but 'also everything that can be valued in money.' (Germane to Assignment of Error No. 42.)

"Twelfth Point of Error

"The error of the Court in refusing to submit Defendant's Requested Special Issue No. 1 as to whether some act or omission of Robert L. Wilson, Jr., caused the gas to escape and Requested Special Issues Nos. 2 and 3 on negligence and proximate cause in connection therewith. (Germane to Assignments of Error Nos. 16, 17 and 18.)

"Thirteenth Point of Error

"The error of the Court in failing to hold that the verdict of $10,000 in favor of each of the minor plaintiffs was excessive."

This is the second appeal of his case. The opinion of this Court is reported in 231 S.W.2d 916, and that of the Supreme Court in 239 S.W.2d 792, reversing and remanding the judgment.

A prime inquiry is what caused the escape of the gas which caused the explosion in the tourist cabin?

The jury found that the illegal use of a flexible rubber hose connection by defendant was a proximate cause of the explosion. The use of the type of hose connection by appellant in the tourist cabin is in violation of an Ordinance of the City of Austin. The jury further found that it was negligence for the appellant to maintain the cabin with both the ceiling ventilator and a ventilator in the east wall covered, and that such negligence was a proximate cause of the explosion.

The jury made further findings that the deceased did not intentionally cause or permit the gas to escape, that the deceased did not detect that gas was escaping, but such failure was not negligence, that the deceased was not negligent in failing to open the windows and doors to expel the gas from the cabin, that deceased did not disconnect the hose from the jet at the wall, and that the explosion was not the result of an unavoidable accident.

We will try to determine if there was evidence to support the jury's answer to Special Issue No. 1 which is:

"Do you find from a preponderance of the evidence that the use by defendant of a flexible rubber and fabric hose to connect the space heater in Cabin No. 22 on the occasion in question was a proximate cause of the explosion?

"Answer this question 'Yes' or 'No'."

The answer was "Yes."

The explosion occurred about 7 a. m. on March 23, 1947, in a cabin of a tourist court owned and operated by appellant, in which Mr. Wilson was badly burned from the fire which accompanied the explosion and died from the effects of the burns later in the day.

Immediately after the explosion, and when first seen, Mr. Wilson was heard by witness DeVries screaming while standing at the door of the bathroom. A few minutes later Mr. Wilson made inquiry of witness Landry of what happened.

Soon after Mr. Wilson was taken to the hospital he made a statement to Mr. Lang, a city officer, as follows:

"Q. Did that heater have attached to it a rubber flexible hose? A. It did.

"Q. Immediately upon your leaving the Benoit Motel, did you go to Brackenridge Hospital in an effort to contact Mr. Wilson? A. I did.

"Q. Did you contact him there? A. Yes, sir, I did.

"Q. Where was he at the time? A. He was in the Emergency Room in Brackenridge Hospital receiving treatment.

"Q. On that occasion did he make any statement to you with reference to how the gas was ignited? A. He did.

"Q. What was that? A. He said that he had gotten up and gone to the bathroom, returned and intended to read some. He turned the light on, and as he flipped the switch, the explosion and flash.

"Q. When you talked to Mr. Wilson, Mr. Lang, did he appear to be

suffering substantially? A. He was suffering, surely.

"Q. Did he appear to be entirely conscious? A. He did.

"Q. Did he indicate to you that at the time this explosion happened he knew what was going on and that as he talked to you, he remembered it? A. He did."

This testimony was admitted without objection as a part of the res gestae.

Later in the day further statements were made by Mr. Wilson to his wife, but excluded as not being a part of the res gestae.

The appellant contends that the jury verdict should not be sustained because the explosion might have resulted from some cause other than those found by the jury, and further say that the gas was caused to explode by the turning on of the light switch, and this fact throws no light on the manner in which the gas entered the room, and that the only gas fixture in the room was a small heater and that it may be assumed that the gas entered the room through the gas cock affixed to the heater connection. The assertion is further made that there is no contention made that the hose was defective and that the burden was on the plaintiffs to prove that the hose was so loosely attached to the wall cock that the gas in explosive quantities was permitted to escape. The appellant made the further observation even though the use of the hose was one possible explanation of the escape of gas it was not the only one, and that it was possible that the gas escaped because of Mr. Wilson's negligence or his intentional permitting the gas to flow, by loosening the hose connection by stumbling against it in his drunken condition or that he failed to light the gas after turning it on with the intention of lighting it, or that Mr. Wilson could have permitted the gas to escape in order to commit suicide.

The appellees take the position that there is evidence that does support the jury finding that the use by appellant of a rubber hose, in violation of a City ordinance, was a proximate cause of the explosion.

█ We believe that the evidence favorable to the verdict of the jury is based on

reason and supports its reasonable inference and conclusion that the use of a rubber hose in lieu of a rigid metallic connection was a proximate cause of the explosion and the resulting death of Mr. Wilson.

Our Supreme Court in Benoit v. Wilson, Tex., 239 S.W.2d 792, 793, 797, in a former appeal of this case, and on evidence and findings similar to the instant case, said:

"Petitioner [Appellant] argues that the finding of the jury and the judgment of the Court of Civil Appeals has been reached through speculation and by basing inference upon inference upon inference. He further contends that the accident could have as reasonably happened in some other manner. We cannot adopt the theory that a jury verdict may be set aside because the record contains evidence of and gives equal support to inconsistent inferences. This court should never set aside a jury verdict merely because the jury could have drawn different inferences or conclusions. The jury in this case has considered all the facts admitted before it and has, by its answers, selected from the conflicting evidence and conflicting inferences that which it considered most reasonable."

█ As was held in Burlington-Rock Island R. Co. v. Ellison, 140 Tex. 353, 167 S.W.2d 723, 726, in disposing of contentions that there is no evidence to show that the negligence of the employees of the railroad proximately caused the death of Ellison because under such evidence his death might have happened in one of the several ways, etc.:

"These plaintiffs were not required to exclude the probability that the accident might have occurred in some other way. To so hold would impose upon them the burden of establishing their case beyond a reasonable doubt."

The evidence is that Mr. Wilson entered the cabin, remained for a short time, entered his car and drove off, and returned in about two hours and parked his car in the garage properly. Mr. Wilson had difficulty in opening his cabin and came to the office and asked for assistance in opening

the door. Mr. Benoit asked a Mr. Landry to open the door, but he too was unable to open the door because the key was broken off in the lock, and Mr. Benoit opened the door and left Mr. Wilson in the cabin and nothing transpired about the cabin or Mr. Wilson which in any way attracted Mr. Benoit's attention until the explosion which awoke Mr. Benoit, and he saw a flame coming from Cabin No. 22 and he called the Fire Department and then went to the cabin and found a Mr. Smith and Mr. DeVries there, both of whom were guests of the courts, both of these men testified.

When Mr. Benoit first got in the cabin Mr. Wilson was standing in the bathroom hollering from pain. Mr. Benoit testified that he looked at the gas cock and it was closed off at the wall, and that Mr. DeVries said "It was closed when I came in." The bed clothes were on fire. Mr. Wilson walked with Mr. Benoit to the office.

When the firemen arrived they sprayed some medicine on Mr. Wilson, and in answer to questions Mr. Wilson gave his name and night address.

W. L. Davis, of the Fire Department, testified as to the presence of two bottles on the table, one an empty liquor bottle, and that there was a bottle of carbolic acid in the drawer of the table.

Expert testimony was given as to proper ventilation of gas in a room and as to the action of gas coming in slowly and accumulating at the highest point in the room and that the explosive limits of gas from about 3 to $6\frac{1}{2}$ per cent mixture, and other testimony that the mixture of gas to be explosive would be from $5\frac{1}{2}$ and 13.5 per cent in air by volume.

Dr. Bailey who attended Mr. Wilson at the hospital, testified that the extent of Mr. Wilson's burns was over 95 per cent of his body surface and 70 per cent was third degree burns and 25 per cent was second degree burns, and that Mr. Wilson was conscious until about thirty minutes before he died, and that he lived about seven hours after the accident, which was longer than the usual period.

When the doctor asked him about his family, Mr. Wilson was talking about his

family, his poor family, and that he was worried about his family.

Mrs. Kerley, the widow of Mr. Wilson, since married to Mr. Kerley, testified concerning her married life with Mr. Wilson and of his interest in his home and family and of his earnings and that Mr. Wilson had been gone from home over a week during which time she had not heard from him and that she put out a missing person report to the police, and that she was notified of the accident and came to Austin and saw Mr. Wilson at the hospital and stayed with him until his death, that he appeared to be suffering very badly, and asked her if she brought the children.

Mrs. Kerley testified that she had filed a suit for divorce about two years prior to Mr. Wilson's death but dismissed it. She testified as to Mr. Wilson's interest in and his relationship with the two little girls, and was good to them, and of Mr. Wilson's relationship with his father and that it was close and that he made some contribution to his father.

There is no evidence of any negligent act on the part of the deceased even that of Mr. Benoit, or any reasonable inferences that could be deduced that Mr. Wilson was guilty of negligence or contributory negligence.

 The evidence does not support a definite finding that Mr. Wilson intended to commit suicide as a matter of law. It must be presumed that Mr. Wilson exercised ordinary care for his own safety and the burden was on appellant to overcome that presumption by competent evidence which was not done.

Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 483. In the Boaz case the Court stated:

"The presumption is that the deceased exercised ordinary care for his own safety, and in order for respondents to be entitled to have it ruled that, as a matter of law he failed to do so, the burden rested upon them to overcome that presumption by competent evidence so conclusively that reasonable minds could not differ with respect thereto. The question must be ap-

proached from the viewpoint of the deceased. His lips are closed and we do not have the benefit of his version of the occurrence.".

The jury found that the deceased failed to detect escaping gas, but that this was not negligence in response to Special Issues Nos. 8 and 9.

From a review of the facts, circumstances and conditions existing at the cabin on the ill-fated night any probability that gas escaped at places other than the hose connection is excluded. The gas escaped at some time prior to the time it was turned off at the wall, and that the fabric hose permitted it to escape and therefore the use of the hose was a proximate cause of the explosion and the resulting injuries and death of Mr. Wilson.

 We believe that the evidence reasonably supports the jury's finding that the use of the cabin with both ventilators closed was negligence and a proximate cause of the explosion.

The jury was asked if the maintenance of the cabin with the ventilator on its east wall covered was negligence and the answer was that it was not.

The jury found that the ceiling ventilator in the cabin was covered at the time of the explosion, and that this was negligence, and that the maintenance of the cabin with both ventilators covered was a proximate cause of the explosion.

The appellant testified that the vent openings were constructed to serve as ventilators and in which fans could be installed to draw the cool air into the cabins, and going out at the top one (such fan or fans were not installed).

The ceiling vent was covered with a piece of cardboard from the other side to keep the heat in, and a similar cardboard vent was nailed over the side wall vent, but such cardboard covers were not apparent to occupants of the cabin, but the vents would appear to be open.

The appellant contends that he was not under a legal duty to install the ventilators at this time but when he did install the ventilators he was obligated to maintain them in a safe manner so that they would

not become hazards to the safety of his guests. 38 Am.Jur., Sec. 17, p. 659; Crockett v. Troyk, Tex.Civ.App., 78 S.W. 2d 1012 (writ dism.).

W. L. Heaton, Fire Marshall, testified that had the ventilators been open that it would have been highly irregular to have had an accumulation or any other explosive mixture there, and that he assumed the ventilators were open and would have ventilated the cabin.

Testimony was given by expert witnesses that gas ventilators, readily and especially so through an opening at the top of a room, will take advantage of an outlet, and as long as you have an air movement upwards the gas would be caught and would rise.

■ Complaint is made of the argument of an attorney for plaintiffs in his closing speech to the jury with regard to the testimony of a witness for appellant in which the following was said:

"* * * I did not enjoy delving into the depravity of that woman * * Nothing happens to a lawyer more embarrassing or more difficult than to have to take the witness stand in his own case, but I felt that the story she had told you gentlemen was so at variance to the story that she had told me, and which I refused to buy, thank God. She came with that story to me, and I thought one of two things, that I think you gentlemen would have thought, either that it was manufactured entirely out of the whole cloth in her own mind, * * * or that it was a plan in an effort to try to get a settlement of the lawsuit. In any case, I took a look at the woman and checked into her a bit, and didn't want any part of her, and while I am on that, I want to digress to say that if there has been any character of impropriety in her testimony, in her conduct, past, present, future, or if there is any impropriety in her being here, I want you gentlemen to understand that I know' the defendant's lawyer had no part of it, because he is not

that kind of person, and he is not that kind of lawyer.'"

No objection was made to the argument when it was made.

We believe that the argument was ill-advised and that better words could have been used but we do not believe that such argument was so improper as to constitute reversible error, and particularly so since no objection was made and the court had no opportunity to instruct the jury in connection therewith, or the attorney given an opportunity to offer an explanation or make corrections of his statement. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

It appears that the witness referred to in the argument testified that she was at the tourist camp on a party on the night of the accident and had seen the deceased during the night, and that Mr. Wilson had been drinking and had several drinks with her party and that Mr. Wilson was depressed and talked about doing away with himself in several ways, and that she told Wilson "we will both do it and get our pictures in the paper." It was on this witness that appellant relied on his theory of suicide of Mr. Wilson.

The witness did not tell anyone about her conversations with Mr. Wilson at the scene and time of the explosion. Subsequent to the prior trial of this case the witness contacted the attorney for plaintiffs and discussed her knowledge and settlement of the case as brought up and considerable questioning of the witness was made by Mr. Jones, attorney for plaintiffs, and extensive testimony was given by the witness in response thereto, and an antagonistic attitude was developed by both the attorney and the witness. The witness was unable to recall the names and residences of any of the others who were in her party. Some testimony was had concerning the witness' domestic relations and her associates and her behavior.

We do not believe that the argument of one of appellees' attorneys who made the opening argument was of such nature as to constitute reversible error. The appellant made no objection to such argu-

ment and had ample opportunity to reply to it in his argument.

The argument now complained of related to the testimony of a witness for appellant to the effect that the deceased told her that his wife was running around with every man in town and he could stand it no more, the particular words were "I want you to know that when that woman came into this courtroom, she made her bid to the plaintiff. She made her bid to Herman and was rejected, yet she comes in here in that fashion. That was the only thing in this case that caused me to be riled."

Since no objection was made the court had no opportunity to instruct the jury as he might have done and the attorney had no chance to offer any explanation, any error was waived. Ramirez v. Acker, supra.

■ We do not believe that the failure of the court to submit an issue as to whether defendant was negligent in using the rubber hose was error.

Admittedly the appellant was using a rubber and fabric hose in violation of a valid ordinance of the City of Austin, knowingly and wilfully, and this act was negligence per se, and no issue was required as to whether it was negligence. The City Ordinance required rigid metal connections. Appellant testified that he was unable to secure the rigid metal connections when the courts were built, but that since the time of the accident he had installed rigid copper tubing and connections.

The appellant cites a number of cases to show that his use of the rubber hose in violation of the ordinance was excused. The first case is Taber v. Smith, Tex.Civ. App., 26 S.W.2d 722 and deals with a violation of the penal code in a traffic case, and involved the failure to have lights. The evidence showed that the lights were in good order at the time the driver started, and the driver did not discover that anything was wrong until he attempted to turn the lights on and the driver was excused. The case of Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892 (S.A.

Civ.App., writ ref. n. r. e.), but we believe that a reading of this case will show that it is determinative of the question. The case of Alpine Telephone Corp. v. McCall, 143 Tex. 335, 184 S.W.2d 830, the Court held the company negligent per se.

■ We do not believe that the deceased was guilty as a matter of law of contributory negligence in failing to ventilate the cabin so there was no showing made that he was aware that gas was in the cabin.

In response to Special Issue No. 8 the jury found that Wilson failed to detect that gas was escaping but that such failure was not negligence.

The jury further found that the deceased, Wilson, was not negligent in failing to open the windows in response to Special Issue No. 11.

The jury found that the explosion and resulting injuries and death of Mr. Wilson were not the result of an unavoidable accident.

■ By his eleventh point the appellant complains of the instruction given the jury that in determining the amount of damage sustained by the minor plaintiffs by reason of their father's death they could consider not only the amount of money they might reasonably have expected to receive from him, but "also everything that can be valued in money."

We overrule this assignment. 33 Tex. Jur. p. 152, Sec. 100.

■ There was no error in refusing to submit appellant's requested Issue No. 1, which inquired whether some act or omission of Wilson caused the gas to escape, as this was a general charge. McDonald, Texas Civil Practice, Vol. 3, Sec. 12.19.

■ We do not believe that the verdict of the jury awarding damages in the sum of $10,000 to each of the minors was excessive, and there was no abuse of discretion.

At the time of the trial of this case the little girls were 12 and 13 years old, respectively.

The evidence shows that the deceased cared for his children in an adequate man-

**142**

ner during his lifetime and that his income was increasing.

On the issue of excessiveness every judgment must stand on its own facts. Marsh v. Williams, Tex.Civ.App., 154 S.W.2d 201.

33 Tex.Jur. p. 148, Sec. 99 is, in part, as follows:

"The measure of the damages recoverable in a suit by a minor on account of the wrongful death of his parent is essentially indefinite and not capable of exact ascertainment. Therefore the amount of the recovery is left to the sound discretion of the jury. Certainly the damages are not to be measured by what it would cost to board or educate the child, but by the pecuniary benefit the minor could reasonably expect to receive from his father had he not been killed."

The judgment of the trial court is affirmed.

Affirmed.