**J. S. SKELLY, dba J. S. Skelly Fuel Co., Appellant,**

v.

**George KING, Appellee.**

**No. 7940.**

Court of Civil Appeals of Texas.

Amarillo.

June 30, 1969.

Rehearing Denied July 28, 1969.

Underwood, Wilson, Sutton, Heare & Berry and R. A. Wilson, Amarillo, for appellant.

Gordon, Gordon & Buzzard and Ross N. Buzzard, Pampa, for appellee.

JOY, Justice.

This is a suit for personal injuries suffered in a truck-automobile collision. From judgment for plaintiff King, defendant Skelly has appealed.

On June 21, 1966, the plaintiff driving his automobile turned west on the Borger-Pampa Highway off of Price Road and approximately 200 to 300 feet from the intersection after turning, plaintiff's automobile was in collision with the bobtail butane truck owned by defendant and driven by his employee Bowerman. The collision occurred across the center strip in plaintiff's traffic lane or over on the shoulder of the road with the left rear of the butane truck striking the right front of

plaintiff's automobile. Apparently the truck then swerved back to the right across the highway striking a semitrailer truck which was either travelling slowly or parked on the shoulder of the highway. Defendant's truck then overturned on its left side approximately in the center of the main travelled portion of the highway. Plaintiff suffered injuries to the upper portion of his body and was hospitalized some eight or nine days immediately thereafter. The case was tried to a jury on special issues and based upon the answers thereto, the court entered judgment for plaintiff for $55,000.00 and defendant has perfected this appeal.

Defendant's first three points of error are based upon the trial court's action in refusing defendant's trial amendment regarding his emergency theory, requested issues and definition pertaining thereto. Defendant's driver's testimony indicated that the semitrailer truck, in front of him and travelling in the same direction, was off of the main travelled portion of the highway on the paved shoulder as he was proceeding east towards his destination. As he approached the semitrailer defendant's driver testified that both rear turn signal lights were on. As he neared the semitrailer the driver testified that the driver of the semitrailer switched to the left turn signal only, causing him to believe that the semitrailer was preparing to start forward and left upon the main travelled portion of the highway. Defendant's driver then testified that he turned his truck to the left applying his brakes and skidded across the center line of the highway, saw plaintiff then for the first time and turned back to his right attempting to avoid plaintiff's automobile. The driver further testified that his truck went into another skid, striking plaintiff's automobile and proceeding across and striking the semitrailer. The driver testified that his butane truck ended up overturned on its left side in approximately the center of the highway. It is defendant's position that his driver was faced with a sudden emergency and after all the evidence

was presented and both parties had closed prior to the charge being read by the jury, the defendant offered a trial amendment alleging an emergency. Upon objection by plaintiff the court refused the trial amendment, as well as defendant's requested issue on emergency and definition of negligence including the emergency limitation therein.

 The doctrine of sudden emergency in this state has been recognized by our courts as being available as a defense to both contributory negligence of plaintiff and primary negligence of defendant. For one to be afforded the sudden emergency theory of relief of negligent action, the condition or circumstance relied upon must arise suddenly and unexpectedly, must call for action leaving no time for deliberation, and must not be brought about or proximately caused by the negligence of the party seeking to avail himself of the doctrine. Dallas Ry. & Terminal Co. v. Young, 155 S.W.2d 414 (Tex.Civ.App. refused); Goolsbee v. Texas & N. O. R. Co., 150 Tex. 528, 243 S.W.2d 386. The defendant's driver was 71 years of age and by his testimony had driven this particular butane truck some 250,000 miles over a period of time. There is nothing in the testimony to indicate there was any obstruction to the view of the driver. Although there was evidence that there had been light rain, there is no evidence that this caused any obstruction to or reduction in visibility. The highway was straight with a slight downgrade running from west to east in the direction the defendant's driver was proceeding this date. The main travelled portion of the highway was approximately 20 feet wide, with eight or nine feet of paved shoulder on each side. The testimony and picture exhibits further indicate that the semitrailer was either stopped or proceeding very slowly on the paved shoulder off of the main travelled portion of the highway. The emergency as contended by defendant was created solely by the semitrailer's driver having switched his turn signal from an indication of park

to an indication of turning to the left upon the main travelled portion of the highway. The evidence indicates, however, that the semitrailer did not turn but remained upon the paved shoulder of the highway. There was no evidence that the semitrailer turned to the left, therefore, the inference is that the defendant's driver could have proceeded straight ahead without colliding with either vehicle. The testimony indicates, along with the picture exhibits, that the plaintiff's automobile when struck by the defendant's truck was off of the main travelled portion of the highway upon the shoulder. The defendant's driver testified that he did not see plaintiff's vehicle until "there was a car looking me right in the face" and "it was awful close in my estimation". No reason or justification was given for the truck driver's failure to see the plaintiff's vehicle. The jury found improper lookout against the defendant's driver and we think properly so. The mere necessity for quick action does not constitute an emergency within the rule where the dangerous situation is one that could have been reasonably foreseen or anticipated and for which the party charged with negligence should have been able to meet. It is common knowledge that vehicles are apt to stop along beside the highway and a fortiori they will start. We think the defendant's driver could reasonably anticipate the condition or circumstance in this case, and the action of the trial court in refusing the trial amendment, requested issues and definition was proper.

 Defendant's fourth point of error is in reference to the testimony of the investigating officer that in his opinion the defendant's butane truck did not skid to the left over the center of the main travelled portion of the highway, but was driven across by defendant's driver. Defendant points out that there were no physical facts, such as skid marks, upon which the officer could base his opinion; that the jury was as well qualified as the witness to form its own opinion from the evidence introduced. The officer was permitted to make two drawings reflecting the direction that a vehicle will skid and the drawings were introduced into evidence as Plaintiff's Exhibit No. 1 and 2 without objection by defendant. Exhibit No. 1 purported to show plaintiff's automobile on its side of the highway (right side) with the driver attempting a left turn with brakes applied and showing a position of the vehicle after skidding to be generally in the same direction of the vehicle's original course. Plaintiff's Exhibit No. 2 purported to show a vehicle on the left or wrong side with the driver attempting a right turn with brakes applied and depicting generally the same course after skidding. Later plaintiff again asked the same officer-witness for an opinion as to whether or not the defendant's truck skidded to the left or was driven to the left. Defendant's objection on the grounds of no predicate was overruled by the court and the witness testified that in his opinion the truck did not skid to the left. An objection to evidence on the grounds of no predicate or insufficient predicate that does not point out to the trial judge wherein the predicate is inadequate, is too general. 56 Tex.Jur.2d, Sec. 171, p. 516; Dabney v. Keene, 195 S.W.2d 682 (Tex.Civ.App. refused n. r. e.); Loumparoff v. Housing Authority of City of Dallas, 261 S.W.2d 224 (Tex.Civ.App. n. w. h.). We think upon proper objection, however, that the opinion of the officer-witness, absent evidence of the officer's qualifications upon the particular matter, would not be admissible. Koonce v. Perales, 268 S.W.2d 683 (Tex.Civ.App. n. w. h.); Loper v. Andrews, 404 S.W.2d 300 (Tex.Sup.Ct.).

 Defendant's fifth point relates to the damage issues in that no affirmative instruction was given in reference to an admitted lower back injury of the plaintiff suffered by the plaintiff subsequent to the upper back injury made the basis of this action. The court instructed the jury in the damages issue in part that " * * * for such damages, if any, as were directly and proximately casued by, or will in rea-

sonable probability be directly or proximately caused in the future as the direct and proximate result of the occurrence of June 21, 1966, made the basis of this suit, if you have so found, taking into account such of the following elements which you find established by a preponderance of the evidence and no other;". Following this instruction were five numbered elements, each of which contained a limiting instruction approximately as follows: "* * * caused by the injury, if any, suffered by him as the direct and proximate result of the occurrence of June 21, 1966, made the basis of this suit". Defendant cited as authority Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683 wherein the damage issue in part read: "* * * resulting directly and proximately from the injuries, if any, of Ethel Ector?" The Supreme Court stated therein:

> "It has long been a settled rule in this state that, where a plaintiff in a personal injury suit is suffering from an infirmity not caused by the accident which is the basis for the suit, and where the injuries flowing from the prior existing infirmity and those flowing from the negligence of the defendant are closely connected and intermingled to the extent that the jury might become confused and allow for improper elements of damages, the trial court should affirmatively charge the jury that plaintiff is entitled to recover only to the extent that his injuries were aggravated by the defendant's negligence. In cases submitted upon a general charge that rule has been many times announced and applied." (Citing cases)

In that case there was evidence that Mrs. Ector had been suffering from a kidney ailment prior to the accident in which she received personal injuries. The rule announced in the Ector case was later summarized in the case of Dallas Ry. & Terminal Co. v. Orr, 147 Tex. 383, 215 S.W.2d 862, p. 864, by the Supreme Court in the following language:

> "It therefore appears that for the rule of the Ector case to apply, there must be: (a) Evidence of a definite infirmity on plaintiff's part aside from injury due to the accident; (b) evidence of causal connection—which might be close proximity in time—between such infirmity and some pain or disability suffered after the accident; and (c) confusingly close 'intermingling" between the infirmity not due to the accident and that due to the accident, so that the jury might be misled into awarding money for the total pain and disability accruing from both, rather than for that accruing only from the accident."

Plaintiff admittedly suffered a lower back injury in February, 1967, after the upper back injury of June, 1966. He further testified that this injury to the lower back was suffered as he attempted to lift a pipe but that "it got all right" but the upper back did not "get all right". We do not find from the evidence that this case comes within item (b) of the rule in the Ector case. The limitations placed in the damage issue and again in each of the five elements therein are definite and clearly limit the consideration of the jury to the injuries suffered by the plaintiff on June 21, 1966. We do not think that the jury was or could have been misled into awarding damages for the injury of February, 1967 and that the injuries were intermingled so closely as to prevent the separation of the two by the jury under the limiting instructions. Yellow Cab & Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92.

█ Defendant's point six alleges that the loss of earning capacity was not established with sufficient certainty to enable the jury to intelligently determine the resulting loss. The trial judge sustained defendant's exception to the pleadings of plaintiff as to loss of income and business profits. Defendant's exception was based upon the allegation that plaintiff's petition did not give fair notice of the claim the de-

**958**

fendant had to meet. The plaintiff-appellee offered no amendment to his pleading, nor any reason for not doing so. The charge limited the damage issue to future loss of earning capacity, if any. The plaintiff offered no evidence of his past earnings or earning capacity, unless it can be said that evidence of the fact that he had done welding as a contractor in the past could be so classified, without any testimony as to the plaintiff's actual earnings prior to the injury. We think the case is governed by Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117, in the language from page 121 as follows:

"The point at issue here is the absence of any evidence which would indicate either the amount of Bonney's earnings or a monetary measure of his earning capacity prior to the injury. The rule in this jurisdiction is that where a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible. Dallas Consolidated Electric Street Railway Co. v. Motwiller, 101 Tex. 515, 109 S.W. 918; McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710; Southwestern Freight Lines v. McConnell, Tex.Civ.App., 254 S.W.2d 422, wr. er. ref. This rule requires that a plaintiff introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so. The reason for this rule is that although the amount of damages resulting from impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury, nevertheless the jury should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. In this case, Bonney introduced no evidence of the amount of his earnings prior to injury and no evidence that such prior earnings did not represent his full earning capacity. No reason appears for his failure to introduce such proof.

Therefore, the trial court erred in instructing the jury that it might take into consideration any impairment to Bonney's earning capacity, * * *."

There was no reason or excuse offered in this case for plaintiff's failure to introduce evidence of prior earnings. The jury was left to guess or speculate when it appears that facts were available upon which the jury could have based an intelligent answer. We do not think that these facts were supplied by the only monetary evidence offered by the plaintiff through his testimony that welders make $14,000.00 to $17,000.00 per year. The trial court should have granted defendant's exception and objection to the court's charge on damages relating to loss of future earning capacity.

Having considered defendant's other points seven through fourteen in the light of our action, we do not think it necessary to comment upon them in this opinion, and the error, if any, probably will not occur in a retrial.

The judgment of the trial court is reversed and remanded for a new trial.