George KING, Petitioner,

v.

J. S. SKELLY d/b/a J. S. Skelly Fuel
Company, Respondent.

No. B–1749.

Supreme Court of Texas.

April 1, 1970.

Buzzard & Comer, Ross N. Buzzard, Pampa, for petitioner.

Underwood, Wilson, Sutton, Heare & Berry, R. A. Wilson, Amarillo, for respondent.

SMITH, Justice.

This is an action for personal injuries growing out of a collision on the Pampa-Borger highway between an automobile and a truck. The suit is by petitioner, George King, against respondent, J. S. Skelly d/b/a J. S. Skelly Fuel Company, hereinafter designated as Skelly.

The case was submitted to a jury on special issues, resulting in findings favorable to the petitioner, King. Based upon the jury verdict, the trial court entered judgment for King against Skelly in the sum of $55,000.00, together with interest thereon at the rate of 6% from the date of entry of judgment until paid. That judgment was reversed by the Court of Civil Appeals and the cause was remanded to the trial court for a new trial. 443 S.W.2d 953. We reverse the judgment of the Court of Civil Appeals and remand the cause to that court to pass upon the points presented there over which this Court is without jurisdiction.

Skelly presented several questions of law in the Court of Civil Appeals. Some of these questions were passed upon and some were not. In view of our disposition of the question upon which the reversal by the Court of Civil Appeals was based, we shall, later in this opinion, dispose of all of the questions over which this Court has jurisdiction.

The Court of Civil Appeals based its judgment of reversal upon the ground that the trial court erred in overruling Skelly's objection to special issue no. 6, the damage issue. The objection was directed at Subdivision (c) of special issue 6. This subdivision, which is one of the elements the court instructed the jury it should take into account in arriving at what sum of money would fairly and reasonably compensate King for damages sustained, if any, reads:

"(3) The reasonable present cost value loss, if any, of earning capacity of George King as you may find from a preponderance of the evidence will in reasonable probability be sustained in the future beyond this date directly and proximately caused by the injury, if any, suffered by him as a direct and proximate result of the occurrence of June 21, 1966, made the basis of this suit."

The objection in the trial court to the inclusion in the charge of the above instruction was because: "* * * the record is wholly lacking in testimony with respect to plaintiff's own earnings at anytime in the past, and hence, the record does not embrace that minimum evidence which is required of a plaintiff as the basis of a damage recovery founded upon the claim of reduced or impaired earning capacity."

At this juncture, we shall state only the evidence bearing upon this question. Before his injury, petitioner had been engaged in a variety of jobs, but at the time of his injury he was in business for himself as a contractor; with his own equipment and with the aid of three or four employees, he principally did work for the Cities Service Company, including repairing and laying pipelines. King testified that he did all the welding involved in his

contracting jobs. Although there was no evidence of King's prior earnings, he did testify that, before sustaining the injury he could have had a job as a pipeline welder, and that such welders make $14,000.00 to $17,000.00 per year; he also testified that prior to the trial but after being injured, he worked three weeks as a pipeline inspector, but that driving from site to site caused him too much pain to continue. He further testified that pipeline inspectors earn $650.00 per month. This, in substance, is the evidence relied upon by King and which he contends furnished with sufficient certainty a basis for the jury to arrive at the amount of his loss of future earning capacity.

The Court of Civil Appeals held that this testimony afforded no basis for the jury's award, relying upon Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S. W.2d 117, (1959). The court in *Bonney* held that "although the amount of damages resulting from impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury, nevertheless the jury should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer." The plaintiff in that case had, prior to his injury, been a watch repairman and had, after the injury, been forced to give up that vocation because his vision was flawed.

In *Bonney*, we reaffirmed the rule in this jurisdiction that where a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible. We stated that "[t]his rule requires that a plaintiff introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so." However, we did not limit the required proof merely to evidence of his prior earnings; instead, we noted that "[t]he point at issue here is the absence of any evidence which would indicate *either*

the amount of Bonney's earnings *or a monetary measure of his earning capacity prior to the injury.*" Emphasis added.

An analysis of three cases cited in *Bonney* is in order. In Dallas Consolidated Electric St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S.W.2d 918 (1908), plaintiff was a stenographer who had been injured in a street car accident; she introduced evidence showing the extent of her physical injuries and their duration, and that she had been strong enough before her injury to walk to and from work, but that after her injury she had been compelled to take public transportation; she failed, however, to introduce evidence of her actual earnings before the injury. In holding that submission of an issue on impaired earning capacity was justified by the evidence, we said:

> "Evidence is adduced to put the jury in possession of facts from which they can determine the extent of impairment of earning power, and is not intended in itself to establish a fixed measure of damages. When the jury are informed of such a fact as that just stated, they have enough to enable them to allow something upon that score."

In McIver v. Gloria, 140 Tex. 566, 169 S. W.2d 710 (1943), the plaintiff was a share-cropper, whose proof that he had averaged, over several years, thirteen to sixteen bales of cotton yearly was held to be a sufficient measure of his earning capacity, despite his failure to prove the value of that amount of cotton, or to prove what portion was attributable to his own labor. In the third case, Southwestern Freight Lines v. McConnell, 254 S.W.2d 422 (Tex.Civ.App.—El Paso 1952, writ ref'd), cited in *Bonney*, the plaintiff, manager of an automobile agency, failed either to introduce evidence of his earnings before the injury or evidence of some measure of his earning capacity. In that case, the court properly held that "plaintiff did not discharge the burden incumbent upon him to produce available facts to enable the jury to arrive at an intelligent verdict

694

as to the extent and amount of his loss of future earning capacity." 254 S.W.2d at 425.

We believe that the Court of Civil Appeals in our case has misapplied the holding in *Bonney*. There we said that Bonney "introduced no evidence of the amount of his earnings prior to injury and no evidence that such prior earnings did not represent his full earning capacity. No reason appears for his failure to introduce such proof. Therefore, the trial court erred in instructing the jury that it might take into consideration any impairment to Bonney's earning · capacity, * * *." The case was remanded to the trial court for a new trial. The record in our case leads to a different conclusion than that reached in *Bonney*.

King, prior to his injury, had been self-employed and his profits did not result solely from his own personal earning capacity but resulted from three sources: (1) his own labor, (2) the labor of three or four employees, and (3) the return on capital invested in machinery. Therefore, King's profits from his self-employment were not a true measure of his earning capacity. Furthermore, the trial court sustained a special exception to King's pleadings of loss of income and business profits. This explains King's failure to introduce evidence of his prior earnings. However, King relied upon a monetary measure of earning capacity other than his earnings prior to his injury. King's testimony shows that he could, by performing the same tasks in the employ of another which he performed while self-employed, earn from $14,000.00 to $17,000.00 per year. We hold that such evidence is a sufficient monetary measure of his earning capacity prior to the date of injury and meets the requirements announced in the *Bonney* case.

Having determined that the Court of Civil Appeals erred in reversing the judgment of the trial court on the loss of future earning capacity point, it is our duty to examine the brief filed by Skelly, as appellant in the Court of Civil Appeals, to determine whether there is another ground upon which the judgment of that court should be affirmed. See Southwestern Bell Telephone Co. v. Johnson, 389 S.W.2d 645 (Tex.Sup.1965); McKelvy v. Barber, 381 S.W.2d 59 (Tex.Sup.1964); Myer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575 (1955).

We now relate the background facts necessary for a clearer understanding of the questions to be considered below.

King was traveling west on the Pampa-Borger highway and Skelly's driver, Jess Bowerman, was traveling east on the same highway. Bowerman testified that he was approaching a parked trailer truck which was parked on the shoulder of the east-bound lane and was headed east when the driver of the parked truck switched his signal from a "parked signal" to a "left turn signal." Bowerman, thinking the truck was about to pull off the shoulder on to the highway in front of him swerved his truck to his left. Bowerman was in the west-bound lane when he saw King's automobile for the first time; he then cut his truck back toward the east-bound lane but such action was too late to avoid colliding with King's automobile. At one time Bowerman testified that he swerved to the left, applied his brakes and went into a front-end skid into the west-bound lane, that he almost had it straightened up when he saw King for the first time, and that he then swerved back to his right, applied his brakes and was in a rear-end skid when the collision occurred. At another time Bowerman testified that he did not remember ever applying his brakes. After the collision, Bowerman's truck traversed the center strip, into the east-bound lane and on to strike the parked truck which had never pulled off the shoulder on to the highway. King contends that as a result of the collision on June 21, 1966, he sustained injury to his upper back, a broken bone in his shoulder and three or four broken ribs. The testimony shows that an examination revealed that King had two

compression fractures in the upper back. There is also evidence that in February, 1967, King suffered a lower back injury when he bent over to lift a pipe but he testified that "it got all right."

Four of Skelly's points urged in the Court of Civil Appeals are presented as cross-points here. These points will be considered first. In his first cross-point Skelly contends that reversal of the trial court and affirmance of the judgment of the Court of Civil Appeals is required by reason of the claimed error of the trial court in receiving in evidence the opinion testimony of the witness, Schneider. Schneider, a Highway Patrolman with the Department of Public Safety at the time of the accident, qualified as an expert. He testified that he made an investigation at the scene of the wreck. Schneider was permitted, without objection, to testify and drawn a diagram showing that if a person in a vehicle is traveling down his own right side of the road, turns his wheels to the left, applies his brakes and goes into a skid, the right side of his vehicle will be skidding forward and angling toward the left side of the road. Likewise, Schneider was permitted, without objection, to testify and draw a second diagram showing that if a person in a vehicle is traveling down the left side of the road, turns his wheels to the right, applies his brakes and goes into a skid, the left side of his vehicle will be skidding forward and angling toward the right side of the road. There were eight photographs introduced into evidence by King without objection. These photographs showed the damage to the vehicles involved in the accident and the position of these vehicles following the accident. Schneider was permitted to testify that based upon his study of the damage to the vehicles, both at the scene of the accident and in the photographs, it was his opinion that at the moment of impact Skelly's vehicle was going sideways and that King's vehicle collided with the left rear side of Skelly's vehicle. This testimony as to the position of the vehicles at the moment of impact was objected to by Skelly but the objection was overruled. On appeal Skelly has not complained of the admission of the above testimony. Schneider was then permitted to testify as follows:

"Q. Now, basing an opinion on the position of the two vehicles * * * at the moment of impact, do you have an opinion as to whether the * * * [Skelly vehicle] slid from its right hand side of the road to the left side of the road?

\* \* \* \* \* \*

"A. Well, it is my opinion that he * * * had already started making his turn to the left or he was already in the left hand lane, and he noticed the approaching vehicle and he turned his truck back to the right, and it puts him into a left side skid, the left side is skidding toward the vehicle.

"Q. Now, do these drawings [previously described diagrams of a skidding vehicle] have any bearing on that opinion?

"A. This Exhibit No. 2 [second described diagram] is what I was talking about, his left rear right back here is what hit the car * * *.

"Q. But, the question was, whether or not the truck [Skelly's vehicle] skidded over to the left to begin with, or whether it drove over there? That is the question.

"A. Well, it is going to have to be an opinion.

"Q. All right. What is your opinion? [Before an opinion was expressed the following question was asked.]

"Q. All right. Is this information, this conclusion or this principle [principle of skidding described in the first diagram] plus the position of the automobiles at the time of the wreck sufficient for you to form an opinion as to whether or not the vehicle had turned to its left and ap-

plied its brakes and skidded to the left hand side of the road.

"A. No sir. It is my opinion that he didn't skid to the left side."

All of Schneider's testimony indicating or stating that Skelly's vehicle was driven onto the left hand side of the road rather than skidding there was timely objected to by Skelly. The objections were as follows:

" * * * my continuing objection will be that his opinion is incompetent for want of a predicate in the way of a factual basis upon which the opinion can be founded. * * *

* * * * * *

"There is just no predicate at all in any testimony that has been offered for an opinion from this witness on the subject."

There was no objection that Schneider was not properly qualified as an expert. The Court of Civil Appeals held that "[a]n objection to evidence on the ground of no predicate or insufficient predicate that does not point out to the trial judge wherein the predicate is inadequate is too general." We disagree with the Court of Civil Appeals holding that Skelly's objection was too general because the objection did point out wherein the predicate was inadequate— " * * * want of a predicate *in the way of a factual basis* upon which the opinion can be founded * * *."

While much of the Schneider testimony was admissible, we agree with Skelly that the opinion evidence given by Schneider was not admissible and that the objection to its introduction should have been sustained. However, it does not follow that the admission of the inadmissible evidence requires a reversal of the judgment of the trial court. In order to warrant a reversal, the error complained of must have been prejudicial to the substantial rights of Skelly. This cause should not be reversed unless it can be held that the admission of

the opinion evidence was calculated to and probably did cause the rendition of an improper judgment. Rules 434 and 503, Texas Rules of Civil Procedure. The trend of the courts is to follow " * * * a policy of refusing to set aside or reverse judgments for errors of law committed during the trial unless in the sound judgment of the court the errors contributed in a substantial way to bring about an unjust result." 3 Am.Jur. 555 (1936). See Calvert, "The Development of the Doctrine of Harmless Error in Texas," 31 Tex.L.Rev. 1, 17–18 (1952). In this case, the question of whether or not the opinion evidence given by the witness, Schneider, did in all reasonable probability result in a jury verdict convicting Skelly of negligence proximately causing the accident is to be determined as a matter of our judgment in the light of the record as a whole. Duncan v. Smith, 393 S.W.2d 798 (Tex.Sup.1965). In discharging his burden of establishing the inadmissible evidence was prejudicial, Skelly was not required to prove or demonstrate that but for the erroneous action of the trial court in admitting the testimony, a different judgment would necessarily have resulted. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210, 216 (1958).

In the light of the record as a whole, especially in view of the testimony of Bowerman, Skelly's driver, and that of King, and the testimony of Schneider, which was admitted without objection, we have concluded that the inadmissible testimony did not probably cause and was not reasonably calculated to cause the rendition of an improper judgment. See Missouri-Kansas-Texas Railroad Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 944 (1956); American General Ins. Co. v. Jones, 152 Tex. 99, 255 S.W.2d 502 (1953).

The harmless error rules just announced control our decision to overrule Skelly's cross-point 4 in this Court, which appears as point 7 in the Court of Civil Appeals, relating to claimed improper argument. Briefly, Skelly contended in the Court of

Civil Appeals that the trial court erred in overruling his motions for mistrial and new trial which were based on the argument of King's counsel. Skelly admits that the court sustained all objections and instructed the jury not to consider the argument, but, contends that despite this action by the trial court a new trial was required. It would unduly lengthen this opinion to set out herein the argument and the objections thereto. It is our opinion that it did not result in an improper verdict.

■ Under point 8, in his brief filed in the intermediate court, Skelly contends that the trial court erred in overruling his timely urged objections addressed to the argument of King's counsel on the matter of damages. The specific complaint is that the argument was inviting a damage verdict founded on a standard other than that prescribed by the charge of the court. We have examined the record and conclude that reversible error does not exist.

■ We next consider Skelly's contention that the trial court erred in overruling his objection to the damage issue on the ground that there was "absent from the issue any sufficient or adequate exclusion of a recovery for injuries suffered since the collision in question or for conditions arising since the injury in question, whether or not the result of injury, and particularly there is absent from the issue any adequate or sufficient exclusion of the February, 1967, injury and its results." We overrule this contention. The record shows that King's injuries sustained on June 21, 1966, were all to the upper part of his body and all of his pain was between his shoulder blades; he had broken bones in his shoulder, broken ribs and pain in his upper back. His symptoms were always confined to pain and muscle spasm in his upper back. The back injury which King sustained in February, 1967, was confined to his lower back and he testified that "it got all right." The trial court submitted one

damage issue which listed five elements to be considered by the jury. The issue began by limiting recovery to " * * * such damages, if any, as were directly and proximately caused by, or will in reasonable probability be directly and proximately caused in the future as the direct and proximate result of the occurrence of June 21, 1966, made the basis of this suit * * * taking into account such of the following elements which you find established by a preponderance of the evidence and none other: * * *." Each of the five listed elements ended with " * * * suffered by him as the direct and proximate result of the occurrence of June 21, 1966, made the basis of this suit." In view of the court's charge, the evidence showing that the injury sustained on June 21, 1966, was confined to the upper back and the evidence that the subsequent injury in February, 1967, was confined to the lower back, we do not think the jury could have become confused and allowed damages as a result of the injury sustained in February, 1967. Therefore, the rule in Dallas Ry. & Terminal Co. v. Ector, 131 Tex. 505, 116 S.W.2d 683 (1938) that "where a plaintiff in a personal injury suit is suffering from an infirmity not caused by the accident which is the basis of the suit, and where the injuries flowing from the prior existing infirmity and those flowing from the negligence of the defendant are closely connected and intermingled to the extent that the jury might become confused and allow for improper elements of damages" has no application here.

■ Skelly's points 1, 2 and 3 in his brief in the Court of Civil Appeals were grouped and argued together. The points are: (1) there was an abuse of the court's discretion in the denial of Skelly's motion for leave to file a trial amendment pleading the theory of emergency, (2) the court erred in refusing his requested issue two, presenting the theory of emergency, and (3) the court erred in overruling his timely urged written objection addressed to the

failure to include as a part of the definition of negligence the concept of emergency. The record shows that the accident occurred on June 21, 1966. Thereafter, this suit was filed and Skelly filed his original answer on November 16, 1967. The deposition of Jess Bowerman, Skelly's driver, was taken on December 16, 1967. On August 14, 1968, a jury was selected and testimony was concluded and the witnesses were discharged at the end of the day. On the morning of August 15, 1968, the charge was prepared. The trial amendment was tendered to the trial court on August 15, 1968, after the evidence had closed, but before the draft of the court's charge was submitted to counsel for the parties to review. In denying the leave to file the trial amendment, the court attached the following qualification to Skelly's Bill of Exception:

"1. Defendant's original answer was filed November 16, 1967;

"2. The deposition of Jess Bowerman was taken on December 16, 1967, and that at that time he claimed to have swerved to the left because the truck had turned off the right hand lights, leaving the left hand burning;

"3. The Defendant filed two amended answers after such deposition;

"4. Apart from the exceptions, all three answers presented the same matter;

"5. The Court would have felt compelled to grant a motion for continuance founded upon the granting of leave to amend and this would have constituted the second continuance of this case and a second mistrial; and

"6. There was no explanation by the defendant as to why he was not aware of the defense sooner."

Skelly contends, with respect to the motion, that the trial amendment pleaded an issue which had been fully developed by the testimony and that the filing of the motion would not have required the hearing of further testimony. Skelly contends that this being true, the completion of the trial would not have been delayed. He further contends that the refusal of leave to file the motion was an abuse of discretion. We cannot agree. As the qualification to the Bill of Exception shows, the deposition of Bowerman revealed that the Skelly truck swerved to the left and the record shows that Bowerman said that when he turned to the left, he "was over on the wrong side of the road and facing him dead on before you ever saw him." He further testified in the trial that he did not see King's vehicle until after his truck was on the wrong side of the highway. In the deposition testimony, Bowerman stated that after seeing King's vehicle in front of him, his truck skidded. At no time in his deposition did Bowerman testify that he applied his brakes. In testifying at the trial, he testified for the first time—"Well, I guess when I hit my brakes, it caused the front end to skid across the center stripe into the, what would be the left hand lane to me, which would be the right hand lane going west."

In view of this record, it seems clear to us that the trial court was justified in concluding that the proffered amendment should have been filed long before the trial. It is true that Bowerman testified near the close of the trial for the first time that the application of his brakes caused his truck to skid to the left and get into the path of the oncoming King vehicle, but that affords no justification for the long delay in filing the motion for leave to file the trial amendment. As we said in Westinghouse Electric Corp. v. Pierce, 153 Tex. 527, 271 S.W.2d 422 (1954), "[t]o require the trial court to permit amendments such as the one filed in this case would disrupt orderly procedure and lead to frequent interruptions and interminable delay in concluding expensive jury trials. McDonald's Texas Civil Practice, Vol. 2, page 737."

This testimony in regard to application of the brakes, coming for the first time near the close of the evidence, materially changed the factual basis of Skelly's defense. The testimony, no doubt, was the strongest evidence bearing upon the emergency defense sought to be pleaded. Bowerman was the driver of Skelly's truck. There is nothing in this record to indicate that Bowerman had withheld from Skelly the facts in regard to the brakes or the fact of application of the brakes. The injection of the changed factual basis of defense of the suit and the emergency defense under all the circumstances would not have allowed Kelly, without a continuance or postponement of the case, the necessary time to adequately make an investigation as to the type of brakes and their operating conditions at the time of the accident. The fact that the witness, Schneider, testified as an expert does not make it conclusive that King was necessarily put on notice that the defense of emergency would be proffered by way of trial amendment at the close of the evidence and after all witnesses had been excused. We hold that no abuse of discretion has occurred. The action of the trial court should be upheld. See Southwestern Bell Telephone Company v. Johnson, 389 S.W.2d 645 (Tex.Sup.1945); Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290 (1959). This holding renders it unnecessary to decide points 2 and 3.

We have examined all other points in Skelly's brief in the Court of Civil Appeals over which this Court has jurisdiction and find them to be without merit. This Court is without jurisdiction to consider Skelly's point 9, the excessiveness of the verdict, and his points 12 and 14 which are assignments in the Court of Civil Appeals involving the sufficiency of the evidence. Accordingly, the judgment of the Court of Civil Appeals is reversed and the cause is remanded to the Court of Civil Appeals for the Seventh Supreme Judicial District of Texas at Amarillo, Texas for consideration of Skelly's points 9, 12 and 14.