**TOM'S TOASTED PEANUTS, INC., et al.,**
**Appellants,**

v.

**John Mack DOUCETTE et al., Appellees.**

**No. 7255.**

Court of Civil Appeals of Texas,
Beaumont.

June 10, 1971.

Rehearings Denied July 29, 1971.

John D. Rienstra, Jr., Beaumont, for appellants.

R. A. Richardson, H. A. Coe, Jr., Kountze, Ken Parker, Beaumont, for appellees.

KEITH, Justice.

The appeal is from a judgment which awarded damages for claims arising out of the collision of two automobiles. Doucette was driving his station wagon in an easterly direction along FM Road 770 near the town of Saratoga in Hardin County, when he was passed by a truck going in the same direction. Immediately after passing Doucette, the truck, owned by Tom's Toasted Peanuts, Inc., driven by one Trahan, an agent in the course and scope of his employment, turned to its left to enter the driveway of a store upon the northerly side of the highway. The truck made this movement without coming in contact with either of the other cars involved in our suit.

As the truck was making its left turn and was occupying the north lane of the east-bound roadway, Mrs. Gilbert, who was proceeding westerly upon the highway at the time, swerved her car to avoid striking the truck and skidded into Doucette's car causing injuries to both drivers and Doucette's young son who was riding with him.

Doucette was joined by his son in his suit against Tom's, its driver, and Mrs. Gilbert, wherein he sought damages for their personal injuries and property damages

done to his car in the collision. Mrs. Gilbert filed a cross action against Doucette, Tom's and its driver; and they in turn sought indemnity and contribution from Mrs. Gilbert. In a trial to a jury, all issues of liability were resolved against Tom's and its driver. Mrs. Gilbert and Doucette were both exonerated of negligence. Doucette was awarded damages for his personal injuries in the sum of $37,810.00 and Mrs. Gilbert's damages were assessed at $12,652.50.* The case is before us on an appeal from the order overruling the amended motion for new trial filed by Tom's Toasted Peanuts, Inc. and its driver.

▪ In the first three points, appellants complain of the refusal of the trial court to submit a cluster of requested issues predicated upon an inquiry if Doucette "failed to turn his vehicle to the left." Since it is undisputed in our record that Doucette turned to the right and tried to stop his vehicle—and made no effort to turn to the left to avoid being struck by Mrs. Gilbert's car—our question is whether the evidence required the trial court to submit the issue of negligence on the part of Doucette in failing to turn to the left in order to avoid the collision.

The highway consisted of two traffic lanes divided by a broken line painted white. There was an improved shoulder ten feet in width alongside each traffic lane, so that the total improved width of the highway was approximately forty-four feet. We now quote from appellants' brief the evidence upon which they rely to support their contention:

"After passing [Doucette], Appellants' truck executed a lefthand turn across the highway and entered into the driveway of Collin's grocery store. Plaintiff, Doucette, claimed that at this time the Gilbert vehicle was in fairly close proximity to the turning truck and that he suddenly became aware of the 'squalling' of brakes, whereupon the Gilbert vehicle skidded out of control for some distance, crossed the center line of the highway and collided with the Doucette car.

"Prior to the turning of Appellants' truck, Doucette had moved his vehicle onto the improved shoulder of the far south side of the highway. He was traveling approximately thirty miles per hour and began applying his brakes when he saw the Gilbert vehicle go out of control. At the time of the collision he had virtually brought his car to a standstill. Doucette did not attempt to turn his vehicle to the left, although situated as he was on the improved shoulder he had approximately thirty-four feet of paved and improved road surface to the left of his line of travel. The collision occurred on the south improved shoulder."

From this factual base, appellants argue that since Doucette had the thirty-four feet of "unobstructed highway to his left" and had his car under such control that he was able to move over on to the shoulder on his side of the road and come to a virtual stop, nevertheless, the issue of his negligence in failing to turn to the left was raised by the evidence. We disagree.

Under the provisions of Art. 6701d, § 52, Vernon's Ann.Civ.St., Doucette was required to operate his vehicle upon the right hand side of the roadway; and, the evidence discloses that he had but a moment within which to take evasive action to avoid being struck by the Gilbert vehicle then out of control. Doucette argues that his conduct must be judged by the conditions confronting him at the time he took his evasive action, not through hindsight which shows that he might have avoided the collision had he turned to the left. We agree, and having carefully reviewed the evidence, do not find that there was evidence of proba-

---

* The judgment also awarded the minor plaintiff, Doucette's son, $50.00 for his personal injuries and the property damages were fixed by stipulation. Since these awards are not attacked upon appeal, we need take no further notice thereof.

tive force which required the Court to submit the group of issues under discussion. Hanks v. LaQuey, 425 S.W.2d 396, 406 (Tex.Civ.App., Austin, 1968, er. ref. n. r. e.).

In Manning v. Block, 322 S.W.2d 651, 656 (Tex.Civ.App., Beaumont, 1959, er. ref. n. r. e.), this court observed:

"Split-second timing is not ordinarily required of operators of motor vehicles. Bass v. Stockton, Tex.Civ.App., 236 S. W.2d 229, 231. This would place an intolerable burden upon the average citizen. None but the most alert could safely venture on the highways."

Being of the opinion that the court submitted the controlling issues which were supported by the evidence, as required under Rule 279, appellants' complaints as to the refusal of the tendered issues are overruled.

■ We also overrule point four contending that it was error for the trial court to refuse to set aside the damage award to Doucette. From our consideration of the evidence, some of which is set out immediately hereafter, we are not convinced that the amount of the damage award was the result of passion and prejudice. The rule governing our consideration of this point is that set out in Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017, 1022 (1950) [following the leading decision of World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962 (1937)], wherein the court said:

"The amount of the verdict itself, when considered in the light of the evidence in the record, may be enough to convince the Court of Civil Appeals that it was the result of passion or prejudice or other improper motive or was in disregard of the evidence. In our opinion there need not be extraneous proof of passion or prejudice on the part of the jury. Indeed, it would be in many cases very difficult and often impossible to make that proof."

In contending that the award was grossly excessive, appellants point out that even Doucette's counsel was surprised. Supporting this position, appellants aptly observe that while Doucette sought only $31,000 for personal injuries and future medical attention, the jury awarded him $37,810. This oversight of counsel was corrected, over appellants' objection, by a post-verdict amendment increasing the ad damnum to an amount which was in excess of the jury's verdict. Appellants complain of the action in permitting the filing of the trial amendment by their point six.

■ In Victory v. State, 138 Tex. 285, 158 S.W.2d 760, 763 (1942), the court said that "The filing of a trial amendment is within the sound discretion of the trial court and unless the trial court clearly abuses that discretion, no reversible error is shown." Rule 66 does not specify a time "during the trial" when such amendments may not be allowed in the exercise of the trial court's discretion, and, in Milam v. Cooper Co., 258 S.W.2d 953, 958 (Tex.Civ. App., Waco, 1953, er. ref. n. r. e.), the filing of a trial amendment, after verdict and before judgment, was not held to be reversible error. In our case, appellants have made no effort to show injury, and we find no abuse of discretion on the part of the trial court. Cf., 2 McDonald, Texas Civil Practice (Rev.Ed.), § 8.07, p. 329. Point six is overruled.

■ Doucette was fifty-two years of age at the time of the accident with a life expectancy of nineteen years. He was not gainfully employed, having been declared totally and permanently disabled by the Social Security Administration in 1960. This determination was made following the amputation of one of his legs made necessary by thrombosis occurring while he was hospitalized for abdominal surgery. Additionally, he had been afflicted with high blood pressure for some time before the accident and was under the care of his physician and taking medication for such condition.

Doucette sustained no broken bones, lacerations, or contusions in the accident made the basis of this suit, his complaints being confined to his. neck and shoulders caused, as he said, when thrown about in his car by the force of the collision. He was not hospitalized following the accident but did see a doctor for treatment. He had been under the care of Dr. Hooks before the accident for his high blood pressure, and continued to see him periodically thereafter for both the previous condition and his complaints arising out of the accident.

The accident involved here was on September 4, 1968, and Doucette was involved in another automobile accident in November, 1969. In the latter accident, he was again thrown about in his car and received severe cuts on his head and neck which required hospitalization and some forty sutures to treat his wounds. According to his testimony, these were superficial cuts and did not result in any disability.

His complaints attributed to the injuries received in the accident here under review were confined to pain in his head, shoulders, and neck with headaches. He was frank to admit that such pain was worse on some occasions than on others; and, at the time of trial, he was taking medication prescribed for him by Dr. Hooks.

Dr. Hooks, a general practitioner, was of the opinion that the force of the impact had caused cervical nerve root pressure and exhibited X-rays to the jury which he said demonstrated a narrowing of the space between "C–7 and this one" [apparently between the seventh and sixth cervical vertebrae]. However, the report of the consulting roentgenologist on these same X-rays, discovered by appellants' counsel in Dr. Hooks' records and offered in evidence, asserted that "the alignment and curvature of the cervical segments are normal."

Dr. Hooks was of the opinion that the continued muscle spasm in the neck and shoulder region was confirmatory of his diagnosis of permanent injury to Doucette and that he would continue to experience pain until he had corrective spinal surgery which might, or might not be successful. Although Doucette had been examined by a neurosurgeon, the latter was not called to testify and appellants offered no medical testimony to refute that of Dr. Hooks.

The total medical expenses incurred by Doucette up to the time of trial amounted to $363 for Dr. Hooks and $145 for his examination by the neurosurgeon. As to the need for medical attention in the future, the only testimony we find in the record is that by Dr. Hooks when he said:

> "My opinion would be that it [cost of future medical] would be not less than the average cost for the past two years and conceivably could be more and conceivably could be much more."

The single damage issue applicable to Doucette authorized the jury to consider only past and future medical expenses attributable to the accident in question and past and future physical pain and mental anguish resulting from the accident. There was a cautionary instruction not to award any damages for prior diseases, etc., or for damages resulting from the 1969 accident in which he received the head and neck injuries. The jury was not authorized, under the charge, to award any sum for loss of earnings either past or future. The jury awarded Doucette $37,810.

The present members of this court had occasion recently to discuss the problems confronting us when we considered the remittitur practice in Texas. See Collins v. Gladden, 466 S.W.2d 629 (Tex.Civ.App., Beaumont, 1971, application for writ of error now pending, not yet reported). On the issue of excessiveness, "every judgment must stand on its own facts." Marsh v. Williams, 154 S.W.2d 201, 206 (Tex. Civ.App., Beaumont 1941, er. ref. w. o. m.); Benoit v. Wilson, 258 S.W.2d 134, 142 (Tex.Civ.App., Austin, 1953, er. ref. n. r. e.).

We have given careful consideration to all of the authorities cited by the parties,

but have found no case mentioned in the briefs which fits the pattern of the evidence which we review. None of the cases involved a plaintiff who was totally disabled before the accident, who required constant medical attention for his prior illnesses, and who was involved in a subsequent accident with injurious consequences. In essence, the award is for pain and suffering—admittedly a factor incapable of precise evaluation. From our review of the cases and of this record, we are of the opinion that the award made in this case is excessive in the amount of $17,810. And, there being no other error in the case requiring a reversal of the case, we "purge" the verdict of its excessiveness by requiring a remittitur in the amount suggested. Texas & N. O. R. Co. v. Syfan, 91 Tex. 562, 44 S.W. 1064, 1066 (1898).

If, within ten days, the appellee John Mack Doucette, will remit the sum of $17,810 (reducing the judgment in his favor for the personal injuries to the sum of $20,000), the judgment in his favor will be reformed and affirmed, otherwise, it will be reversed and remanded.

Several issues inquiring of the damages sustained by Mrs. Gilbert were submitted, and we set out the awards made by the jury:

(a) Physical pain and mental anguish in the past—$650;

(b) Physical pain and mental anguish in the future—$6,752.50;

(c) Loss of earnings in the past—$500;

(d) Loss of earnings in the future—$2,600;

(e) Medical expenses in the past—$150;

(f) Medical expenses in the future—$2,000;

or a total award of $12,652.50. Appellants have appropriate points challenging the excessiveness of each of the awards so made to Mrs. Gilbert.

Mrs. Gilbert was fifty-two years of age at the time of the accident and was employed under a somewhat anomalous arrangement by Lee Smith, an old family friend who operated a service station in a nearby town. It was Smith's car she was driving at the time of the accident. She testified that after her divorce in 1962, she carried his checks to the bank, did some of his buying, such as batteries and tires, and that she did some of his bookkeeping. She also prepared his noon meal and carried it to him at the station. She did not work every week, but when she did, she was paid $45 for her work. Her counsel asked her:

"Q. Would you have any estimate of what you would average?

"A. All I can say, when I worked it was Forty-five ($45.00) dollars a week."

Upon cross-examination, Mrs. Gilbert was asked:

"Q. And about how long in all did you work for Mr. Smith"

"A. Well I didn't work every day. I worked just every once in a while for Lee Smith and then I would go back to my daughters and stay. I would work some weeks and other weeks I would be at my daughters."

\* \* \* \* \* \*

"Q. And you worked for Lee Smith off and on, is that right?

"A. Yes, sir.

"Q. Worked for him a few days and then you would be off and wouldn't do anything?

"A. Yes, sir, that's right."

Her employer was not called to testify and we do not find in our record any testimony showing her gross earnings during any definite period of time.

Since the constituent elements of Mrs. Gilbert's damage award were separately

evaluated, we do not face the identical problems which confronted us in passing upon similar contentions with reference to Doucette. At the outset, we note that her counsel concedes that the award for medical expenses in the past [item (e) of our summary] lacks support in the evidence, at least to the extent of $46.00, and suggests that if we adhere to "a strict interpretation of the evidence," we could require a remittitur in that amount. We have no alternative under our interpretation of the law. See the cases cited in 17 Tex.Jur.2d, Damages § 230, p. 290, et seq. To the extent of $46.00, at least, the award is excessive; but, as to this amount, it may be cured by the remittitur which we order.

She owned her home in Batson, was in good health, and "making enough money to get by on" before the accident, so that she "wasn't dependent on anybody." She did not see a doctor until the day following the accident and when she did, she received heat treatments for pain in her neck and shoulder as well as pain relieving pills. She continued under the care of Dr. Gibson in Batson until May, 1970, when he closed his office, seeing him at two-week intervals. She then consulted Dr. Copeland and was taking his pain relieving prescriptions (along with aspirin) at the time of the trial. She had earned no money after the accident and was staying with her daughter at the time of the trial.

She complained of pain in the neck and shoulder as well as headaches, and denied that she experienced any such trouble before the accident. She testified that she was unable to do her usual housekeeping tasks of sweeping, ironing, etc.

Dr. Copeland, who had seen Mrs. Gilbert some nine times before the trial, testified that upon his examination she had muscle spasm over the right shoulder blade and over the back of the neck. He exhibited X-rays which he said disclosed a loss of the lordotic curve of the cervical spine indicating serious injury; and, since the pain had persisted for two years, was of the opinion that such condition was "chronic or permanent type pain; it might exist indefinitely." His charges amounted to $104.00 but there was no proof either as to the reasonableness or amount of those made by Dr. Gibson. Dr. Copeland's estimate of "the reasonable charges for that [future medical] attention to be, say on an annual basis" was $180.00. He said that she would be handicapped in doing her housework and "she would have easy fatigue and pain and discomfort."

Cross-examination of Dr. Copeland revealed that Mrs. Gilbert was suffering from bursitis of the right shoulder which, he said, was traumatic in origin. His X-ray findings were essentially normal except for the straightening of the lordotic curvature; and, he found no evidence of cervical disc involvement nor any abnormal narrowing of the disc spaces.

■ The evidence as to Mrs. Gilbert's earnings before the accident is extremely vague; and, on the whole, unsatisfactory. Nevertheless, after considering the record as a whole, in the light of the reexamination of the authorities found in King v. Skelly, 452 S.W.2d 691, 693–694 (Tex.Sup. 1970), we are unable to state that Mrs. Gilbert "did not discharge the burden incumbent upon him [her] to produce available facts to enable the jury to arrive at an intelligent verdict as to the extent and amount of his [her] loss of future earning capacity." Southwestern Freight Lines v. McConnell, 254 S.W.2d 422, 425 (Tex.Civ.App., El Paso, 1952, er. ref.), quoted in King v. Skelly, supra (452 S.W. 2d at p. 693). Points ten through fourteen are overruled.

■ The injuries received by Doucette and Mrs. Gilbert in the collision gave rise to complaints of remarkable similarity. Both complained of pain in the head and neck and each brought forward a medical

witness who found objective symptoms upon which to predicate his opinion that pain was experienced by the particular individual. We have reviewed Doucette's award and, even after the reduction which we have required, it is nearly three times as large as that which the jury awarded to Mrs. Gilbert. The award to Mrs. Gilbert, although generous, is not, in our opinion, excessive and appellants' points seven, eight, and nine are overruled.

Finally, appellants' points seventeen and eighteen, challenging the award of $2,000 to Mrs. Gilbert for future medical expense, are found to be within the range of the testimony and are overruled.

The single item of excessiveness which we have found with reference to Mrs. Gilbert [$46.00 as to past medical expense] may very well have been an oversight on the part of the trial court and her counsel. We say, in passing, that the point which raised the question is, in itself, somewhat obscure. Consequently, while we require a remittitur of the excess, $46.00, [to be made within ten days after the date of this opinion], we do so without assessment of costs against Mrs. Gilbert.

Finding no error in the judgment of the court below except the amount of money awarded to Doucette and Mrs. Gilbert, we affirm the judgment of the trial court upon the conditions herein set out:

If, within ten days from the date of this opinion, Doucette will remit the sum of $17,810.00, the judgment in his favor will be reformed and affirmed; otherwise, it will be reversed and the cause as to Doucette and appellants will be reversed and remanded.

If, within ten days from the date of this opinion, Mrs. Gilbert will remit the sum of $46.00, the judgment in her favor will be reformed and affirmed; otherwise, it will be reversed and the cause remanded for a new trial as between appellants and Mrs. Gilbert.

Costs in the trial court are assessed against appellants and the costs of appeal are divided equally between appellants and Doucette.

The judgment is affirmed, conditionally.