704 S.W.2d 142 (1986)
Wanda Jan DANIELS et al., Appellants,
v.
MELTON TRUCK LINES, INC. et al., Appellees.
Nos. 11-85-200-CV, 11-85-203-CV.
Court of Appeals of Texas, Eastland.
February 6, 1986.
Rehearing Denied March 6, 1986.
J. Gene Bailey, Rex A. Nichols, Nichols, Bailey & Watson, Longview, for appellant.
Crawford Parker, Jr., Rick McPherson, Parker & McPherson, Carthage, James W. Sharp, Sharp, Ward, Price & Hightower, Longview, for appellee.
DICKENSON, Justice.
This motor vehicle collision case was tried by a jury which refused to find that either driver's actions were a proximate cause of the collision. Both sides appeal the judgment that all plaintiffs and counter-plaintiffs take nothing. We affirm.[1]
The plaintiffs[2] were riding in a 1978 Ford Van which collided with a 1979 Freightliner Tractor Trailer. Plaintiffs sued the owner,[3] the Lessee,[4] and the driver *143 of the truck.[5] Each of those defendants filed a counterclaim against the estate of the van's driver.[6]
Each side used expert witnesses to "reconstruct the accident" which occurred on State Highway 149 between Carthage and Longview on November 5, 1980, at 1:30 a.m. The people in the van were on their way home to Carthage after attending a Ronnie Millsap concert in Longview. The truck was on its way to Oklahoma with a load of plywood. The experts agreed that the vehicles had a left-front to left-front collision and that the impact was on the van's side of the center stripe. They reached different conclusions as to which driver caused the collision to occur.
The driver of the van was killed, and all four of his passengers testified that they were sleeping and, consequently, did not know what caused the collision. The truck driver testified that the van was on the truck driver's side of the highway, that he pulled the truck to his left to avoid the collision, and that the van then came back across the center stripe. The highway patrolman testified that two of the young men who were riding in the van told him at the scene of the accident that their driver went to sleep and drifted onto the wrong side of the road, that one of the passengers saw the truck lights and yelled, and that their driver pulled back to his right. Two witnesses who arrived at the scene before the highway patrolman said the two young men told them that they did not know what caused the collision and did not say anything about their driver going to sleep and getting on the wrong side of the road.
The jury's verdict can be summarized as shown:
1. Joseph D. Stephens (the truck driver) did not fail to apply his brakes; did not fail to keep a proper lookout; did not fail to turn to the right; did not go to sleep at the wheel; did not fail to yield; and was not operating his vehicle at an excessive speed.
2. Joseph D. Stephens (the truck driver) failed to keep his vehicle completely within the right half of the roadway.
3. Such failure was not a proximate cause of the collision.
4. Jimmy Dial Craig (driver of the van) was negligent: as to lookout; failure to drive on the right half of the roadway; failure to give the truck driver at least one-half of the highway; failure to yield the right-of-way; and falling asleep. The jury refused to find proximate cause as to any of the negligent acts and omissions.
Under the instructions of the court, the jury was not required to answer any of the other special issues. Those issues related to the apportionment of fault and the amount of damages to each plaintiff and counter-plaintiff.
Plaintiffs urge a single point of error. They argue that the trial court erred in overruling their motion for new trial because statements made by one of the jurors during the jury's deliberations constituted jury misconduct and was an "outside influence" improperly brought to bear on the jury's deliberations.
This point is overruled because of TEX.R.EVID. 606(b) which was adopted before the trial of this case and which now states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (Emphasis added)
*144 The trial court properly refused to consider the jurors' affidavits and bills of exception testimony of six of the jurors that during their lengthy deliberations one of the jurors, Shirley Hamilton:
[K]ept repeating that she was a police officer for the City of Carthage and her duties included patrolling, investigating accidents and issuing tickets.... Juror Hamilton did not directly threaten to use her outside influence and police power on those who disagreed with her, but all jurors had become tired and exhausted and they very easily probably felt both consciously and subconsciously that the power Juror Hamilton had outside the jury room as a police officer would be used against them if they did not agree with her.

* * * * * *
She left the distinct impression that if we did not answer the questions as she thought they should be answered, that we would see her later and could suffer the consequences.... It is my sincere belief that Juror Hamilton used her outside position as a peace officer to influence and intimidate other members of the jury.

* * * * * *
It is my opinion the emphasis of her right to make arrests outside the jury room had an influence on some of the jurors changing and siding with her.

* * * * * *
I really believed that both sides were negligent and the injured persons should have been granted damages but I did not want to have any future problems with Officer Hamilton. She never directly threatened anyone but indirectly she indicated those disagreeing with her could see her later in the patrol car.

* * * * * *
Juror Hamilton did not directly threaten anyone but she was angry and shouted down those who disagreed with her. I can see how the jurors that changed their votes could have felt they would see Juror Hamilton later if they did not vote the way she did.

* * * * * *
It is probable that one or more of them were influenced by the repeated and forceful assertions of Juror Hamilton concerning her outside position as a police officer.
Rule 606(b) is clear. None of the jurors may testify as to "any matter or statement occurring during the course of the jury's deliberations." Those statements concerning Juror Hamilton, accepted as true, do not show "outside influence" within the meaning of the exception stated in this rule. See Black, Article VI: Witnesses, 20 Houston Law Review 409 at 421 (1983 TEXAS RULES OF EVIDENCE HANDBOOK):
The Texas rule, though similar to federal rule 606(b), is more restrictive than its federal counterpart. Both versions allow a juror to testify about whether outside influence was improperly brought to bear. However, the federal rule also permits testimony "on the question whether extraneous prejudicial information was improperly brought to the jury's attention." The Texas Supreme Court deleted this phrase from the rule proposed by the Liaison Committee.

* * * * * *
The term "extraneous prejudicial information" refers to information that is external to the jury, rather than that which is outside the record. Thus, information that is injected into the jury's deliberations by sources other than the jurors themselves constitutes extraneous prejudicial information. (Emphasis added)

* * * * * *
[T]he drafters of the federal rule clearly did not intend for the "extraneous prejudicial information" exception to be used to reach any matters and statements occurring during jury deliberations. To this extent, there is no difference in the effects of the Texas and federal versions of the rule.
*145 All of the cases cited by appellant were decided prior to September 1, 1983, the effective date of TEX.R.EVID. 606(b). Appellant argues that to construe this rule as barring proof of all statements made by the jurors during the course of their deliberations would bar the proof of serious jury misconduct, such as: (1) threats by one juror to do physical violence to another after they leave the courthouse if he does not change his vote; (2) offers of a bribe by one juror to change his vote, to be paid after the jury is discharged; (3) unsworn testimony by a juror about material facts; (4) discussions in violations of the court's instructions to not discuss insurance, attorney's fees, or the effect of their answers to the special issues. As now written, Rule 606(b) bars testimony by any juror as to all matters or statements occurring during the course of their deliberations, except for testimony that "any outside influence was improperly brought to bear upon any juror." As we read this rule, the statements by Juror Hamilton do not come within the exception and, consequently, proof of her statements and their effect is barred by the rule. See United States v. Greer, 620 F.2d 1383 (10th Cir.1980), for a discussion of federal Rule 606(b).
Wendell Ray Dycus, counter-plaintiff, perfected a separate appeal. He urges one point of error, arguing that the trial court erred in failing to disregard the negative answers to the proximate cause questions in Special Issue No. 4. Dycus argues that the van driver's negligence was found by the jury, that the trial court found that his damages in the sum of $33,446.95 were established as a matter of law, and that proximate cause was also established as a matter of law. The cross-point argues that the trial court erred in finding that the damages were established as a matter of law. We need not consider the cross-point, for we overrule Dycus' sole point of error. See Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359 at 363 (1957), which quotes the rule that appellate courts "are without authority to set aside jury verdicts, particularly on questions of proximate cause in damage suits, upon conflicting facts." The facts in this case were in conflict, and the jury resolved the conflicts. Neither side conclusively established that the other side's negligence was a proximate cause of the collision. The case of Moughon v. Wolf, 576 S.W.2d 603 (Tex.1978), cited by Dycus, is factually distinguishable.
The judgment of the trial court is affirmed.
NOTES
[1] These appeals were transferred from the Tyler Court of Appeals to this Court on September 18, 1985. See TEX.GOV'T CODE ANN. sec. 73.001 (Vernon Pamph.1986).
[2] The driver, Jimmy Dial Craig, was killed in the collision. His parents, James E. and Ona Mae Craig, sued for $2,603,033. The four passengers were injured. Wanda Jan Daniels sued for $2,500,000. Danny Ray Griffin sought $1,500,000. W.A. Wedgeworth, Jr. and William Paul Kelly sued for $5,233.75 each.
[3] Wendell Ray Dycus counterclaimed for $34,946.95 as the cost of repairs to his truck and $25,800 as the loss of income while the truck was being repaired.
[4] Melton Truck Lines, Inc. counterclaimed for $5,869.85 for damage to the cargo, picking up and cleaning up the cargo, and lost freight revenue on the cargo.
[5] Joseph D. Stephens counterclaimed for $7,500 for personal injuries.
[6] James E. Craig, administrator of the Estate of Jimmy Dial Craig, Deceased.