**MARATHON OIL COMPANY,**
**Appellant,**

v.

**James E. STERNER, Appellee.**

**No. A14–87–00259–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 20, 1989.

Rehearing Denied Sept. 14, 1989.

Wade B. Williams and Carla Bishop, Galveston, for appellant.

Gordon E. Davenport, Alvin, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION ON REMAND

ROBERTSON, Justice.

James Sterner, appellee in this case, was awarded $102,000 in actual and exemplary damages at the trial court level for his injuries resulting from Marathon's tortious interference with his employment. On appeal to this court, we reversed the trial court. 745 S.W.2d 420. The case comes to us again on remand by the supreme court. 767 S.W.2d 686. After considering appellant's points of error and appellee's cross-points we affirm.

In this court's original opinion, we held that a cause of action exists for tortious interference with an employment contract which is terminable at will. However, we reversed the trial court because we held there was no evidence to support the jury's finding that Marathon interfered without legal excuse or justification. The supreme court upheld our ruling that there is a cause of action for such a case but re-

versed and remanded after finding this court misinterpreted the legal justification finding. The supreme court overruled prior decisions which held that legal justification is not an affirmative defense and stated that, in this case, the jury's failure to find legal justification or excuse meant only that Marathon failed to carry its burden of proof on its affirmative defense. Furthermore, the supreme court held that the contract between Marathon and its subcontractors, who employed Sterner, was some evidence in support of the jury's failure to find Marathon acted with legal justification or excuse. They remand this case for a determination of whether the jury's failure to find legal justification or excuse was against the great weight and preponderance of the evidence. The ruling makes it necessary for this court to consider appellant's points of error three through seven, which were not reached in our prior opinion and to reconsider point of error number two.

Appellant's second and third points of error argue that there is no evidence to support the jury's findings on special issues 1, 2, 3, 4, 5 and 6 or alternatively, that there is insufficient evidence. Our review of these two points involves two different standards. First, in reviewing the no evidence points, we must consider only the evidence and the reasonable inferences therefrom in the light most favorable to the jury's findings, disregarding all other evidence. *Turnbough v. United Pacific Ins. Co.*, 666 S.W.2d 489 (Tex.1984). If there is more than a scintilla of evidence to support the finding, the challenge cannot be sustained. *Stafford v. Stafford*, 726 S.W.2d 14 (Tex.1987). Secondly, in reviewing the insufficiency points we must consider and weigh all the evidence and remand only if it is so against the great weight and preponderance of the evidence as to be unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986).

■ Special issue number 1 asked the jury to decide whether, by a preponderance of the evidence, Marathon interfered with Sterner's employment. The jury answered yes. Looking at the evidence in the light most favorable to the jury's findings and disregarding all other evidence we find that Sterner successfully sued Marathon in 1980 and was awarded $25,000 for personal injuries sustained while working at the Marathon plant as a boilermaker. Ford, Bacon & Davis was a subcontractor to Marathon and hired Sterner in 1981 to do work on the Marathon plant. Sterner was terminated from his employment with Ford, Bacon & Davis after working two days at the plant. The construction superintendent for Ford, Bacon & Davis signed the termination slip and testified that the reason given for the termination was a directive from Marathon oil management to terminate this man from the project. He further stated that "they did not give me a specific reason for terminating Mr. Sterner. They just instructed me—which they give a list of people who are not authorized to come into their plant—that they have been blackballed from entering the premises of the company due to some instance that happened in the past, and I have no idea what that instance was." He also testified that the termination orders came from top management at Marathon, but if Sterner had not been doing his job, Ford, Bacon & Davis supervisors would have told him and Ford, Bacon & Davis would have terminated him. Sterner, however, was fired by Marathon directive alone.

Other evidence in support of the jury's findings shows that Marathon's refinery manager at the time Sterner was fired found out that Sterner was on the plant as an employee of Ford, Bacon & Davis. Having heard about Sterner's lawsuit against Marathon, the refinery manager consulted Marathon files from the trial, which contained Sterner's medical reports. He admitted that although the medical reports concluded that Sterner was capable of working, he told Ford, Bacon & Davis that "we shouldn't have Mr. Sterner on this job because of the ... I left it at that". Marathon's refinery manager also testified that ordinarily Marathon would not tell Ford, Bacon & Davis which employees should be on the plant, because the contract between Marathon and Ford, Bacon & Davis, gave

the subcontractor the sole right to supervise, manage and control the performance of the work. Clearly this is some evidence of interference.

Next, we must look at all the evidence to determine if the jury's finding of interference was against the great weight and preponderance of the evidence. Evidence contrary to the jury's findings shows that Marathon had a direct and pecuniary interest in the work performed on the plant, regardless of the contract which limited Marathon's interest to the end results obtained. Further, Marathon's refinery manager had responsibility for the safety of all persons on the plant and was concerned that Sterner was not physically capable of doing the work required of him. Marathon continually denied that its employees instructed an employee of Ford, Bacon & Davis to terminate Sterner's employment with that company. Although this is evidence contrary to the jury's findings, the finding of interference was not against the great weight and preponderance of the evidence.

■ Special issue number 2 asked the jury whether they found from a preponderance of the evidence that Marathon's interference, if any, was justified or legally excused. They answered no. The supreme court stated that appellant had the burden of proof on issue 2, an affirmative defense, and so that court considered the no evidence point applicable to issue 2 as contending that appellant met its burden of proof on legal justification as a matter of law. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982). Having found some evidence to support the jury's failure to find legal justification or excuse, they concluded that Marathon failed to establish its affirmative defense as a matter of law. The court then remanded the case to us for a determination of whether the failure to find was against the great weight and preponderance of the evidence.

The only evidence in favor of legal justification or excuse was the testimony that Sterner was incapable of doing the required work, that Marathon had the right and responsibility to insure the safety of all persons on the plant and that Marathon had a pecuniary interest in the work performed. This however, does not constitute a bona fide exercise of one's rights or an equal or superior right in the subject matter as that of Sterner. *Sakowitz v. Steck,* 669 S.W.2d 105 (Tex.1984), overruled on other grounds, *Marathon v. Sterner,* 767 S.W.2d 686 (Tex.1989). In favor of the jury's failure to find legal justification or excuse was testimony that the contract between Marathon and Ford, Bacon & Davis gave the subcontractor the sole right to hire and fire and that ordinarily, Marathon would not disregard the contract. Thus, the jury's answer to special issue number 2 was not against the great weight and preponderance of the evidence.

■ Special issue number 3 inquired whether, from a preponderance of the evidence, Marathon's interference, if any, was a proximate cause of damage to Sterner. Special issue number 4 asked the jury what sum of money would reasonably compensate plaintiff for any damages caused by Marathon's interference. The jury found the interference caused Sterner $2,975.00 in damages. Reviewing the evidence in the light most favorable to this answer and disregarding all contrary evidence we find that Sterner was removed from his work at the plant, but he was not out of work for long. Although he could not recall the exact amount of lost wages, his pleadings requested $2,975.00. Marathon employees testified that Ford, Bacon & Davis could have allowed Sterner to do other work for them even after Marathon requested they remove Sterner from the plant. They denied instructing Ford, Bacon & Davis to fire Sterner. However, Sterner testified that union rules require the subcontractor to release the worker if he is terminated from a specific job. The worker then goes back to the union hall to take the next job which comes his way by rotation. There was no evidence controverting the fact that Sterner lost wages for some period of time. Thus there is some evidence in support of the jury's findings and viewing all the evidence, it appears the jury's answers were

not against the great weight and preponderance of the evidence.

■ Special issue number 5 asked the jury if they found from a preponderance of the evidence that Marathon, through its management personnel, acted with malice. The court's charge defined malice as ill will, spite, evil motive, or purpose of injury to another. The jury found that Marathon did act with malice toward Sterner. Looking only at the evidence favorable to the jury's finding, there was evidence by a Ford, Bacon & Davis supervisor of a blacklist or a list of persons blackballed from the Marathon plant due to prior instances. Marathon's refinery manager admitted that he instructed Ford, Bacon & Davis to terminate Sterner despite having read medical reports which concluded that Sterner was capable of working. Also, Sterner testified that while working at the plant, he was told by a Marathon representative, who had participated in the lawsuit between Sterner and Marathon, that he would not be working at the plant if the representative had anything to do with it. This is some evidence supporting the jury finding of malice.

Next, we must view all the evidence to determine if the finding of malice was against the great weight and preponderance of the evidence. Marathon's refinery manager stated that he was responsible for the safety of all persons at the plant and was concerned that Sterner was not physically capable of doing the work required of him. Further, he testified that if Sterner had been capable, Marathon would have had no problem in allowing him to work at the plant. There was evidence corroborating Marathon's concern for Sterner's health also. Sterner himself testified that he had experienced dizziness, chest pains, difficulty breathing and climbing and had gotten ill at the Marathon job only the day before he was terminated. Marathon employees denied the existence of a blacklist and in fact none was ever produced. Although this provides conflicting evidence in regard to the jury's finding of malice, we hold the jury finding is not against the

great weight and preponderance of the evidence.

The jury, in answer to special issue number 6, awarded $250,000 in exemplary damages against Marathon. Appellant contends, and we agree that there was no evidence to support this award. Plaintiff's pleading and argument asked for $100,000 and the trial court refused to permit a trial amendment to enlarge plaintiff's request after the jury verdict. However, the trial court first reduced the damages to $100,-000, as plead, then ordered a remittitur to $70,000. Therefore, judgment against appellant was not rendered on the basis of the contested jury finding.

Thus, the jury findings on special issues 1, 2, 3, 4, 5 and 6 were supported by sufficient evidence. Appellant's second and third points of error are overruled.

■ Appellant's fourth point of error argues that the trial court erred in overruling appellant's motion for new trial and not granting an additional $60,000 remittitur because the damages awarded were excessive. The trial court conditioned its denial of appellant's motion for new trial on plaintiff's acceptance of a remittitur to $70,000. Arguably, appellant has not preserved error on this point because in its motion for new trial, appellant requested a remittitur to $5,000 in exemplary damages while in this point appellant argues the damages should have been reduced to $10,000. However, were we to consider the merits of this point, we would still conclude the trial court did not abuse its discretion in the amount of remittitur ordered.

■ This court may order a further remittitur of damages only if the evidence is factually insufficient to support the amount awarded, or the amount is against the great weight and preponderance of the evidence so as to be manifestly unjust. *Pope v. Moore,* 711 S.W.2d 622 (Tex.1986). The test for exemplary damages is whether they are rationally related to the actual damages awarded. *Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712 (Tex.1987). However, even this relationship is only one factor used to determine if the exemplary award is the result of passion rather than

reason. Other factors to be considered include the nature of the wrong, the character of the defendant's conduct, the degree of the defendant's culpability, the situation and sensibility of the parties and the extent to which the conduct offends the public sense of justice and propriety. *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981).

Apparently the conduct of Marathon did offend the jury's sense of justice and propriety. The testimony concerning blacklists suggests that the nature of the wrong is widespread. Furthermore, testimony that the Marathon representatives acted on their knowledge of Sterner's lawsuit against Marathon is evidence of culpable behavior by Marathon. This evidence is factually sufficient to support the remittitur and the amount ordered is not against the great weight and preponderance of the evidence so as to be manifestly unjust. Appellant's fourth point of error is overruled.

■ We will next address appellee's cross point number one because it also complains of the remittitur. Appellee argues it was error for a trial judge, who did not hear the case, to order any remittitur. The record reveals that one judge heard the trial while another ruled on the motion for new trial and ordered a remittitur based on the motion itself, briefs of counsel and arguments. In support of his argument appellee cites this court to *Pope v. Moore,* 711 S.W.2d 622 (Tex.1986) and *Larson v. Cactus Utility Co.,* 730 S.W.2d 640 (Tex.1987), which set the standard of review for damage awards. In these cases, the supreme court said that both courts of appeal and trial courts may order remittiturs only after finding the evidence factually insufficient to support the amount awarded, or finding the award against the great weight and preponderance of the evidence. Further, these cases emphasized that courts ordering remittiturs should detail the reasons why the evidence does not support the amount awarded by the jury. While the judge ordering the remittitur may have erred in failing to detail the evidence in support thereof, the fact that one judge heard the trial and a different judge ordered the remittitur is not itself erroneous. Appellee's first cross-point is overruled.

■ Appellee's second cross-point complains that the trial court erred in refusing to allow plaintiff to file a post-verdict trial amendment. The Texas Rules of Civil Procedure provide that a trial court may allow a trial amendment to correct a defect, fault or omission in the pleadings or to encompass issues tried by implied or express consent. Tex.R.Civ.P. 66, 67 (Vernon Supp. 1989). Such an amendment is proper both before and after a verdict, but is within the discretion of the trial court. *Tom's Toasted Peanuts, Inc. v. Doucette,* 469 S.W.2d 399 (Tex.Civ.App.—Beaumont 1971, writ ref'd. n.r.e.). There is no reversible error absent a show of abuse of discretion. *Allen v. Whisenhunt,* 603 S.W.2d 242 (Tex. Civ.App.—Houston [14th Dist.] 1980, writ dism'd.). In this case, there was no defect, fault or omission in the live pleadings and there was no evidence in support of an exemplary damage award larger than that pled by plaintiff. Also, appellee has failed to show that denying a trial amendment on this issue was an abuse of discretion. Appellee's cross-point number 2 is overruled.

■ Appellant next contends that the trial court erred in overruling appellant's objection to testimony regarding blacklists because the testimony was irrelevant, unfairly prejudicial, hearsay and/or nonresponsive. In the record of the motion for new trial, counsel for each side agreed that the trial court judge had granted Marathon's motion in limine and instructed both parties to raise the issue of blacklists before the bench. They also agreed that such was properly done and the trial judge overruled Marathon's objection to mention of the blacklists.

At trial, appellant objected to testimony by deposition of J.A. Burks, a construction superintendent for Ford, Bacon & Davis at the time Sterner was fired. Burks was asked if Marathon gave any reason for terminating Sterner and he replied, "they give a list of people who are not authorized to come into their plant". Appellant object-

ed to this testimony as nonresponsive and hearsay, therefore, only those issues are preserved for our review. After the objection was overruled, Burks testimony continued "they have been ... blackballed from entering the premises of the company due to some instance that happened in the past, and I have no idea what that instance was". However, appellant has failed to cite this court to any authority in support of his argument that this was nonresponsive or hearsay and has not even argued that the definition of hearsay applies to this testimony. Appellant's fifth point of error is overruled.

In appellant's sixth point of error he argues that the trial court erred in overruling appellant's motion for new trial because appellee's incurable jury argument resulted in the rendition of an improper judgment. Appellant is forced to argue that the jury argument was incurable because there was apparently no objection to the argument, and the argument itself was not included in the record before us. We hold, however, that any argument regarding blacklists was based on evidence admitted at trial and was not incurable. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324 (Tex.1968); *Buzzard v. Mapco, Inc.*, 499 S.W.2d 352 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). It was not calculated to cause rendition of an improper judgment because the existence of blacklists was relevant to the issue of Marathon's malice and culpability in terminating Sterner. *Texas Sand Co. v. Shield*, 381 S.W.2d 48 (Tex. 1964). Appellant's sixth point of error is overruled.

Lastly, appellant maintains that the trial court erred in overruling appellant's motion for new trial and in sustaining appellee's objection to juror testimony, at the hearing on the motion for new trial. It is appellant's position that the juror affidavits demonstrated juror misconduct occurred at trial, due to an outside influence when jurors discussed blacklists; therefore jury testimony at the hearing was proper. The Texas Rules of Civil Procedure allow jurors to testify at a hearing on a motion for new trial if the grounds for the motion are jury misconduct and the motion is supported by affidavit. TEX.R.CIV.P. 327(a) (Vernon Supp.1989). However, jurors are allowed to testify only as to whether any *"outside influence"* was brought to bear upon any juror. Juror testimony or juror affidavits are not otherwise allowed. TEX. R.CIV.P. 327(b) (Vernon Supp.1989).

Case law has interpreted the phrase "outside influence" to be something besides the statements and influence of jurors on each other. *Daniels v. Melton Truck Lines Inc.*, 704 S.W.2d 142 (Tex. App.—Eastland 1986, writ ref'd n.r.e.); *Robinson Electric Supply v. Cadillac Cable Corp.*, 706 S.W.2d 130 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.). Therefore, discussion by jurors concerning blacklists, involving evidence admitted at trial could not be an "outside influence". Furthermore, even if the jurors discussed personal experiences and knowledge regarding blacklists, in violation of the court's charge not to do so, this does not amount to juror misconduct. *Clancy v. Zale Corp.*, 705 S.W.2d 820 (Tex.App.— Dallas 1986, writ ref'd n.r.e.); TEX.R. CIV.P. 226a (Vernon Supp.1989). Appellant's seventh point of error is overruled.

The judgment is affirmed.